COMMONWEALTH TRUST COMPANY, Plaintiff, v. KATHERINE DuMONTIMER, MARGARET. K. REAGAN et al., Defendants; KATHERINE DuMONTIMER, Plaintiff in Error v. MARGARET K. REAGAN et al., Defendants in Error.

**St. Louis Court of Appeals, February 8, 1916.**

1. **INTERPLEADER: Pleading: Joinder of Issues.** In an action of interpleader, where each of the defendants asserted a claim to the fund, by a pleading, the issue as to the ownership, as between the defendants, was sufficiently presented, notwithstanding the respective defendants filed no answer or reply to the claims of the other defendants, especially where the case was tried as if the claims were in issue.

2. **NEW TRIAL: Sufficiency of Motion.** A motion for a new trial which challenged the judgment as directly contrary to the evidence, against the law and the evidence, and because, under the law and the evidence, it should have been for the moving party, sufficiently called the attention of the trial court to the point of such party, that, under the evidence, judgment should have been rendered for him.

3. **APPELLATE PRACTICE: Interpleader: Scope of Review.** An action of interpleader being tried as in equity, the whole case, both on the law and the evidence, is open to review, on appeal.

4. **GIFTS: Inter Vivos: Delivery.: Bank Deposit.** Where a savings bank depositor requested that his account be made a joint account, in favor of himself and another, and a signature card was sent to such other, who duly signed and returned it to the bank, and the account was thereupon made subject to withdrawal by either, or the survivor, there was a complete gift of a joint interest in the account, entitling the donee to the fund, on surviving the donor, although the donor had at all times retained the pass book, which, under the rules of the bank, was required to be presented when an amount was withdrawn.

Error to St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

REVERSED AND REMANDED (*with directions*).

*Vital W. Garesche* and *George B. Webster* for plaintiff in error.

(1)   The transfer of the deposit from Fitzpatrick to the credit of Fitzpatrick and Mrs. Du Montimer, payable to either or the survivor, created, a joint tenancy between them, and on his death the fund passed by operation of law to her.   Mack v. Bank, 3 N. Y. S. 441; Kelly v. Bank, 92 N. Y. S. 578; McElroy v. Bank, 40 N. Y. S. 340; Augsbury v. Shurtliff, 180 N. Y. 138; In re Mechan, 69 N. Y. S. 9; In re Main, 73 Conn. 638; In re Griffith Est., 1 Lack. Leg. N. (Pa.) 311; Tiffany, Banks & Banking, 460.   (2) The mere fact that either might have drawn in the lifetime of the other does not negative the effect of the death of one, at least as to so much of the deposit as remained.   Dunn v. Houghton, 51 Atl. 71; In re Main, 73 Conn. 638; McElroy v. Bank, 40 N. Y. S. 340.   Nor does the fact that the pass book was retained by Fitzpatrick of itself destroy the joint ownership created by the contract.   Mack v. Bank, 3 N. Y. S. 441.   (3)   Where a gift is one of a joint interest with the donor, no delivery to the donee is necessary, as the possession of the former is also that of the latter.   14 Am. & Eng. Enc. Law (2 Ed.), p. 1019; Sanford v. Sanford, 45 N. Y. 723.

*Thomas E. Mulvihill* for defendants in error.

(1)   A joint interest is not created in, or a perfected gift made of, a savings bank deposit, by depositing it in the names of the donor and donee, making it payable to the order of either, or to the survivor, and by having stamped upon the pass book the words "joint owners," where the donor continues in possession of the pass book, and therefore retains dominion over the funds with the right at any moment to withdraw the whole of said fund.   Whalen v. Mulholland, 89 Md. 199, 44 L. R. A. 208; Taylor v. Henry, 48 Md. 557; Noyes v. Inst. for Savings, 164 Mass. 583; Woon-

socket Inst. for Savings v. Heffernan, 20 R. I. 308, 38 Atl. 949; Gorman v. Gorman, 87 Md. 338; Kelly v. Bank, 89 N. Y. Supp. 776; Skillman v. Wiegand, 54 N. J. Eq. 198; Re Bolin, 136 N. Y. 177; Flannigan v. Nash, 185 Pa. 45; Bath Sav. Inst. v. Fogg, 101 Me. 188; Bank v. Merriam, 88 Me. 146; Young v. Young, 80 N. Y. 422; Wood v. Zornstorff, 59 App. Div. 538, 69 N. Y. Supp. 241; DePuy v. Stevens, 37 App. Div. 289, 55 N. Y. Supp. 810; Hallenbeck v. Hallenbeck, 89 N. Y. Supp. 780. (2) The words "joint owners," used in the entry in a savings bank pass book of a deposit made by one to the credit of himself and another as joint owners, should be construed in a restricted sense and not as implying absolute ownership. Gorman v. Gorman, 87 Md. 338; Whalen v. Mulholland, 89 Md. 199, 44 L. R. A. 208. (3) A savings bank book has a peculiar character; it is more than a pass book, or the statement of an account; it is the depositor's voucher, and the only security he has as evidence of his debt. The book is the instrument by which alone the money can be obtained from the bank. Whalen v. Mulholland, 89 Md. 199, 44 L. R. A. 208; R. S. of Mo. 1909, sec. 1154. (4) Was the money deposited in the circumstances of this case a gift *inter vivos?* The great weight of authorities return to this inquiry a negative answer. To make such a gift complete, there must be an actual transfer of all right and dominion over the thing given by the donor, and an acceptance by the donee, or some competent person for him; and it is essential to the validity of such a gift that it should go into effect, that is, transfer the property at once and completely. Intention cannot supply it; words cannot supply it; actions cannot supply it; delivery is an indispensable requisite, without which the gift fails, regardless of the consequences. Thornton on Gifts, sec. 131, p. 105; Banks v. McKenna, 168 Mo. App. 254; Goddard v. Conrad, 125 Mo. App. 168; Banking Co.

v. Miller, 190 Mo. 640; Taylor v. Henry, 48 Md. 557; Barker v. Hedrick, 85 Md. 645; Sav. Bank v. Fogg, 83 Md. 374; Woonsocket Inst. for Savings v. Heffernan, 20 R. I. 308, 38 Atl. 949; Cogswell v. Newberryport Inst. for Savings, 165 Mass. 524, 43 N. E. 296. (5) The fact that the book is made out in the joint names of two or more persons is evidence simply of the depositor's intent that the deposit could be drawn out by either of the persons named, the only presumption being that the deposit was so arranged by the depositor for the purpose of convenience, and it is not evidence of a gift to such other surviving depositor. Burke v. Slattery, 10 Misc. Rep. (N. Y.) 254, 31 N. Y. Supp. 825, 64 N. Y. St. 631; Re Bolin, 136 N. Y. 177, 32 N. E. 626, 49 N. Y. St. 59; Re Brooks, 5 Den. Surr. (N. Y.) 326; Roman Catholic Orphans' Asylum v. Strain, 2 Bradf. Surr. (N. Y.) 34; Mulcahey v. Emigrant Industrial Sav. Bank, 89 N. Y. 435, 138 N. Y. Supp. 358; Holman v. Bank, 124 Pac. 765. (6) A gift *inter vivos* must be established by clear and convincing testimony, and the burden of proof is upon the party claiming the benefit and asserting the title to the property. Jones v. Falls, 101 Mo. App. 544; Jackson v. Lamar, 121 Pac. 857. (7) The contract between joint depositors of a fund in a bank, and the bank, is not controlling evidence on the question as to whether one of the depositors in making the deposit, jointly with the other, intended a gift to the other. Taylor v. Coriell, 57 Atl. 810, 66 N. J. Eq. 262; In re Maine, 73 Conn. 638. (8) It is well settled that equity will not interpose to perfect a defective gift, or a voluntary settlement, made without consideration. Banking Co. v. Miller, 190 Mo. 640. (9) The plaintiff in error did not by any pleading put in issue the material allegations of fact made by defendant in error in respect to his claim to the fund. These allegations not being controverted by any pleading of plaintiff in

error must be taken for the purposes of deciding this controversy as admitted. R. S. 1909, sec. 1830; Duke v. Duke, 93 Mo. App. 244; State v. Henderson, 86 Mo. App. 482. (10) There was no motion for a new trial filed in this case. What purports to be such motion is legally insufficient because it is not sufficiently specific to call to the attention of the trial court the alleged errors committed. R. S. 1909, sec. 1841; Polski v. St. Louis, 264 Mo. 458.

REYNOLDS, P. J.—The Commonwealth Trust Company (hereafter called the Trust Company) brought its bill of interpleader against Katherine Du-Montimer, Margaret K. Reagan and William L. Fitzgerald, the latter as the executor of the estate of Thomas F. Fitzpatrick, deceased, for the purpose of determining the ownership of a deposit of $1359.95 in the hands of the Trust Company in its savings department, the right to which was asserted by Katherine DuMontimer, she claiming that the fund was a joint fund belonging to herself and Thomas F. Fitzpatrick as joint owners and that, having survived, she was entitled to the whole of it. Margaret K. Reagan claimed it as sole legatee of Fitzpatrick, and Fitzgerald claimed it as executor under that will, averring that the fund represented moneys earned and saved by Fitzpatrick during his life and deposited by him with the Trust Company from time to time for safekeeping; that he was at all times sole and absolute owner of it and that it was at all times under his dominion and control and so remained up to his death, and on that happening, passed to the executor as part and parcel of the estate of Fitzpatrick. Bringing the fund into court, the Trust Company asked the court to determine the ownership of the fund as between these three parties, each claiming it as above. The will referred to is not in evidence, but it does not appear that there was any specific be-

quest of this fund, Margaret K. Reagan being general legatee of the testator.

It appears by the evidence in the case that the Trust Company maintained a savings department and that in January, 1912, Thomas F. Fitzpatrick opened a savings account in his own name with the Trust Company. When he opened this account a card was made out for the identification of Fitzpatrick, he signing it, his place of residence and birth date, occupation, and mother's name being written on the card. At that time and down to March 4 it appears that Fitzpatrick had on deposit with the savings department of the Trust Company about $200. On that date Fitzpatrick went to the Trust Company, and stated to Mr. Robert L. Gurney, the manager of the savings department, that he wanted to make his account a joint account and add the name of his sister, that is, Katherine DuMontimer, plaintiff in error, jointly with himself, to it. Thereupon appropriate changes were made in the books of the Trust Company, changing the account from the name of Fitzpatrick to him and Mrs. DuMontimer, and the words "either or survivor to draw" were stamped on the identification card in purple letters with a rubber stamp. A card was thereupon made out and sent to Mrs. DuMontimer, who then resided in New York, for her signature. This card was apparently signed by her and returned by mail to the Trust Company. On the card sent to Katherine DuMontimer, at the top of it, are the words printed, "I hereby agree to the by-laws, rules and regulations governing the savings department of Commonwealth Trust Company. Confer with Mr. Delahunt or R. L. G. on this before paying. R. L. G. Either or survivor to draw." (R. L. G. are apparently the initials of Mr. Gurney.) Following the foregoing is what purports to be the signature of Katherine DuMontimer, her address, place and date

of birth and her maiden name. On the reverse side of the card appears the following:

"St. Louis, Mo., —— 19——.

The undersigned hereby agree to and with each other and the Commonwealth Trust Company, to and do hereby open an account with said Commonwealth Trust Company, and authorize, empower and direct said Trust Company to open an account with us in the name of

THOMAS F. FITZPATRICK,

KATHERINE DUMONTIMER,

payable to either, or the survivor or under such other designation as said Trust Company may employ. And we agree that we are and shall be joint owners of all money deposited or which may hereafter be deposited to the credit of said account, and of all accrued and accruing interest thereon, and that upon the death of either of us the moneys then on deposit to the credit of said account shall become and be the property of the survivor.

"And we are mutually agreed and hereby notify said Trust Company that each or either of us, or the survivor of us, may at all and any times withdraw and receive from said Trust Company the whole or any part of said moneys now deposited, or which may be hereafter deposited to the credit of said account; that each of us is authorized and empowered to sign our respective names, or the name or names of any or either of us to any receipt, check, draft or other voucher for the money so drawn, and such receipt, check, draft or other voucher, so signed, shall be a full acquittal to said Trust Company for all moneys so withdrawn from said account.

Witnesses:

_____,"

Whether the names of Thomas F. Fitzpatrick and Katherine DuMontimer as they appear here in the

body of this were signed by them is not clear, Mr. Gurney testifying that "the signature on the card was that of Fitzpatrick." What signature he refers to is not clear. These cards were in evidence and with oral testimony constituted all the evidence in the case.

The oral evidence was given by Mr. Robert L. Gurney. He testified, on direct examination, that on or prior to March 4, 1912, he was manager of the savings department of the Trust Company and that on or about that date Thomas F. Fitzpatrick came to the banking house of the Trust Company and in his presence stated that he wanted to make his account a joint account and add his sister's name to it. He was informed that he would have to send a card to his sister to have her sign it; that her name was thereupon added to that of Thomas F. Fitzpatrick on the books of the Trust Company and the card sent to Katherine DuMontimer for her signature, along with a letter advising her of the action of her brother, and was subsequently returned, in answer to the letter, to the Trust Company by mail. He also testified that on July 2, 1913, the balance in the savings account amounted to $1435.14, and that on December following a credit of $24.81 representing accrued interest was added; that Fitzpatrick withdrew $100 on January 15, 1914, leaving a balance in bank of $1359.95 at the time of his death, which occurred July 26, 1914. This was the amount paid into ourt by the Trust Company on filing the bill of interpleader, less certain expenses and costs allowed the Trust Company.

On cross-examination Mr. Gurney testified that he did not charge his memory with every detail of the transaction but remembered it from his acquaintance with Fitzpatrick and from the circumstances attending the matter. All that he recalled was the fact of Mr. Fitzpatrick being there and making the change and that on that day the Trust Company had written a let-

ter to Mrs. DuMontimer. He further testified that all
that any person taking out a joint account has to do is
to fill in the blanks in a form, and so far as the con-
tract is concerned that is already prepared, printed on
the back of the identification card, and the party is
required to sign the card. He further testified that
the Trust Company had received no deposit from Mrs.
DuMontimer; that he was familiar with the rules gov-
erning the withdrawal of funds in the savings account;
that it was not possible to withdraw the fund without
the presentation of the pass book, and that parties de-
positing in a joint account must conform to these rules;
that the pass book is a voucher issued by the Trust
Company to the depositor, and the book representing
this account was given to Mr. Fitzpatrick. Asked if
he was prepared to state just what the conversation
was between himself and Mr. Fitzpatrick at the time
the joint account was opened, other than disclosed by
the record, witness answered that he remembered that
he had the conversation and that he wrote in the letter
to Mrs. DuMontimer, "To-day your brother, who has
a savings account with us, requested that we add your
name to the account. We therefore inclose signature
card," and so on. He further stated that prior to the
time he had this conversation with Mr. Fitzpatrick
about changing his account to a joint account, he did
not know Mrs. DuMontimer. Asked whether her name
was suggested to Fitzpatrick by witness, or to witness
by Fitzpatrick, he answered that the letter, evidently
referring to the letter to Mrs. DuMontimer, would seem
to indicate that Fitzpatrick must have suggested it.

This is substantially all the evidence in the case.
Upon its conclusion the trial court, by its judgment,
awarded the fund to William L. Fitzgerald, as execu-
tor. Mrs. DuMontimer, filing her motion for new trial
and excepting to the overruling of that motion, sued
out her writ of error.

The points made by counsel for plaintiff in error are: First, that the transfer of the deposit from Fitzpatrick to the credit of himself and of Mrs. DuMontimer, payable to either or the survivor, created a joint tenancy between them and on his death the fund passed by operation of law to her. Second, the mere fact that either might have drawn in the lifetime of the other, does not negative the effect of the death of one, at least as to so much of the deposit as remained; nor does the fact that the pass book was retained by Fitzpatrick of itself destroy the joint ownership created by the contract. Third, that where a gift is one of joint interest with the donor, no delivery to the donee is necessary, as the possession of the former is also that of the latter.

To the contrary the learned counsel for defendant in error urges that a joint interest is not created in or a perfected gift made of the savings bank deposit by depositing it in the names of the donor and donee, making it payable to the order of either or to the survivor, and by having stamped upon the pass book the words "joint owners," where the donor continues in possession of the pass book and therefore retains dominion over the fund, with the right at any moment to withdraw the whole of the fund; that the words "joint owners" used in the entry in a savings bank pass book of the deposit made by one to the credit of himself and another as joint owners should be construed in a restrictive sense and not as implying absolute ownership.

Other points are made by counsel for defendant in error but it is submitted that the above are sufficient to set out the different theories entertained by counsel.

In addition to these points going to the merits of the case, it is urged that plaintiff in error did not, by any pleading, put in issue the material allegations of fact made by defendant in error in respect to his claim to the fund. Disposing of that we may say that we do

not think it tenable. It is true that no replies or answers were filed, but by the pleadings which each party claiming the fund put in, the issue was very squarely presented to the court as to the ownership as between these parties of this fund and that was sufficient, especially when, as in this case, without any objection or suggestion to the contrary, the case was tried as if their several claims were in issue.

It is further urged that there was no motion for new trial filed, what purports to be such motion, it is claimed, not being sufficiently specific to call the attention of the trial court to the alleged errors committed. We do not think this is tenable. That motion distinctly challenged the judgment as directly contrary to the law, contrary to the evidence, against the law and the evidence, and that under the law and the evidence it should have been for plaintiff in error. We think this is sufficient (Municipal Securities Corporation v. Kansas City, 265 Mo. 252, l. c. 265, 177 S. W. 856); sufficient at least to have called the attention of the trial court to the errors upon which the party relied, and that is the whole office of a motion for new trial.

The cause, being on interpleader, was tried as in equity. Hence the whole case, both on the law and the evidence is open to us.

In 14 Am. & Eng. Ency. of Law (2 Ed.), p. 1019, it is said:

"Where one person gives to another a joint interest in property with himself, no delivery to the donee is necessary, the possession of the donor being also that of the donee. . . . Similarly where a man deposited money in a savings bank to the credit of himself or wife, or the survivor, it was held that this created a joint ownership of the fund, and that the wife was entitled to it after the husband's death as a gift from him, although she had never had possession of the pass book during his life."

Tiffany in his work on Banks and Banking, page 460, treating of savings banks (pp. 459-60) says:

"Where two persons own jointly a deposit, the survivor becomes vested with the ownership of the entire fund. When one person makes a deposit in a savings bank in the joint names of himself and another, if the depositor's donative purpose is established, it is usually held to create a joint ownership, and to be a valid gift *inter vivos*. This result does not follow, however, from the mere fact that a deposit is made in such form; for the depositor may always show that the money was his own and that such was not his intention. And as deposits are frequently made in this form when there is no intention to create a joint ownership and no donative purpose, the mere form of the deposit is not enough to establish such intention.

"Where the depositor delivers the pass book to the other with the purpose of making a gift, it is generally conceded that a joint tenancy is created. Some courts refuse to hold such deposits valid as gifts, when the depositor retains the pass book, but by the better rule, if the intent to create a joint tenancy appears, whether the book be delivered or not is of no consequence. This has been explained on the ground that the transaction creates a contractual relation between the bank and the donee, and while by retention of the pass book the donor still has the power to withdraw the deposit, thereby making the gift of no value, the legal effect of the transaction as a gift becomes complete upon the consummation of the contract which the bank enters into with both jointly, and which, having the incident of survivorship, vests the right of action thereon in the survivor."

Mr Morse in his work on banks and banking, treating of a gift by deposit in the name of the donee, has said: "It is well established that a gift may be made without delivery of the pass book." [2 Morse on

Banks & Banking (4 Ed.), sec. 609.]    The authorities cited for this are Blasdel, Admr., v. Locke et al., 52 N. H. 238; Smith, Admx., v. Ossipee Valley Ten Cents Savings Bank, 64 N. H. 228, and McElroy v. National Savings Bank, 8 N. Y. App. Div. 46 (see same case 8 N. Y. App. Div. 192, as also 40 N. Y. Supp. 340).

Blasdel, Admr. v. Locke et al., supra, is a case in which an aunt deposited a sum of money in a savings bank in the name of her niece, intending that it should be a gift to the niece, but retained the deposit book in her own possession until her death.   A by-law of the bank provided that deposits should only be withdrawn by the depositors or persons authorized by them.   During her last sickness the aunt for the first time informed her niece of the gift.   On the death of the aunt her administrator brought a bill in chancery against the niece and the bank to recover the deposit.   The Supreme Judicial Court of New Hampshire held that the deposit created a trust in the bank in favor of the niece and that upon information of what had been done being conveyed by the aunt to the niece and acceptance by the niece the title of the latter to the money became absolute, although there had been no delivery of the deposit book.   In the opinion in the case the transaction is treated as creating a trust and the act of the aunt as a declaration of trust, and it is said that the delivery to the bank as trustee by the aunt for her niece was a sufficient delivery ''good at least until the trust was revoked, and that an acceptance by the donee before a revocation (admitting it to be revocable) will consummate the gift.''   This, the court holds to be the true doctrine, although one condition of the by-laws of the bank was that the deposit could only be withdrawn upon presenting the original deposit book, another condition being that the deposit could only be withdrawn by the depositor or some person authorized by her.   It further appeared in that case that the intestate, the

aunt, before her death informed her niece that there were three savings bank books in her trunk and that one of them was for her. Says the court (l. c. 244):

"If the donee then accepted her bounty, we think it thereupon became a perfected gift. The fact of such acceptance does not appear affirmatively in the case; but, considering that it was a benefit to the donee, burdened with no condition, we think her acceptance must be inferred from what does appear; and, according to the views expressed, the title to the money thereupon became absolute in the donee . . . and the defendants are entitled to a decree." The bill was dismissed.

In Smith, Admx., v. Ossipee Valley Ten Cents Savings Bank, supra, a father deposited money in the savings bank in the name of his daughter, intending it as a present gift to her, subject to the right of himself and his wife to take the income during their lives. While the daughter was informed of the arrangement and assented to it, the deposit book was never delivered to her. The court held this was a good gift of the deposit, subject to the life interest specified. In the course of the opinion in that case, Judge BINGHAM says (l. c. 232):

"Just what it is necessary to do to pass the title to money through the intervention of a savings bank, the authorities do not agree in the different States, and often in the same State, and it would be a difficult task to reconcile them. The doctrine of Blasdel v. Locke, supra, is not supported in all of its positions by all of the authorities, but we see no good reasons for departing from it, and think it supports the conclusions to which we have arrived." Here follow a multitude of authorities in which the questions involved are discussed.

In McElroy v. National Savings Bank, supra, it is held that an entry in a savings bank pass book representing moneys deposited by a husband, reading "Al-

bany Savings Bank, in account with Mrs. Alida P. Bell, or James C. Bell, her husband, or the survivor of them,'' constitutes the parties joint owners of the sum deposited, and entitles the wife, if she survives her husband, to take the deposit, and that it is not necessary to the validity of the gift that the pass book should be delivered to or remain in the possession of the wife during her lifetime. There are two opinions in this case as reported in 8 New York App. Div., supra, one at page 46, the other at page 192, the first delivered by Judge PUTNAM, the other by Judge PARKER. It was a case in which the fund was claimed by the executors of the husband, deceased, as against the administrator of the wife, also deceased but dying after her husband, and the court held that the administrator of the wife was entitled to the fund, she having survived her husband, to the exclusion of any rights of the executors of the husband. The wife never had possession of the pass book during the life of her husband. Sanford v. Sanford, 45 N. Y. 723, and Fowler v. Butterly, 78 N. Y. 68, are cited, among other cases, in McElroy v. National Savings Bank, supra, in support of the rule there announced.

In Augsbury v. Shurtliff, 180 N. Y. 138, l. c. 147, both of the last two cases are cited by Judge VANN in his concurring opinion in support of the proposition that, ''When a husband takes securities payable to himself or his wife, they become hers if she survive him, and the delivery thereof to her by him is not necessary to perfect the gift.''

In Main's Appeal, 73 Conn. 638, referring to the evidence as to the facts accompanying the transaction, it is said (l. c. 644):

''If it had been the intention of Mrs. Goodrich in making these deposits that a joint interest with herself in the money should immediately vest in her daughters, the gift would not have failed because she retained pos-

session of the bank books. Her possession as a joint owner would have been regarded as the possession of the other joint owners.'' McElroy v. National Savings Bank, supra, and Sanford v. Sanford, supra, are cited in support of this.

One of the most exhaustive discussions of the questions here involved is in Dunn v. Houghton, 51 Atl. Rep. 71. There, finding that the original owner of the fund in a savings bank had made ''a donative transfer'' of an interest in the fund, but had retained possession of the pass book, it is held that this fact did not affect the completed donation which had been made. The correctness of this principle was acknowledged in Schippers v. Kempkes, 67 Atl. Rep. 1042, the latter affirmed by the court of Errors and Appeals, 72 N. J. Eq. 948, and both cases referred to approvingly in McCullough v. Forest, 84 N. J. Eq. 101.

As illustrative of the theory contended for by defendant in error, a very strong case is that of Whalen v. Milholland, 89 Md. 199. There the Court of Appeals of Maryland held that the deposit of money in a savings bank in the names of a depositor and another person as joint owners, payable to the order of either and the survivor, is not of itself sufficient to constitute a gift of the money to such other person who becomes the survivor if the depositor retains possession of the pass book.

We have no authority in our State directly bearing upon this question. As noted by the Supreme Court in New Hampshire in Smith, Admx. v. Bank, supra, as well as by the vice-chancellor in Dunn v. Houghton, supra, there is a very decided conflict of opinion on this question.

In the case at bar there was a completed transaction; a donation of the fund; a transfer of the account on the books of the bank from the name of the depos-

193 App. 20

itor to himself and another, by direction of Fitzpatrick. Although Fitzpatrick retained possession of the pass book and had the right during his life to withdraw the whole fund, he did not do so but left a large amount standing to the joint account when he died. The transaction was accepted, acquiesced in and acknowledged by the savings bank, here the Trust Company. The fact of transmission of the card by the Trust Company, by direction of Fitzpatrick, to Mrs. DuMontimer and her subsequent return of it to the Trust Company with her signature and identification data filled in, evidenced not only her knowledge of the transaction but acquiescence in it; acceptance by her.

Without undertaking to compile the multitude of authorities on the subject, or to reconcile them, our conclusion is that this was a completed donation, by which the fund became a joint fund, passing to the survivor on the death of one of the parties to it, and that the purpose of the donor was not defeated by his retention of the pass book.

The judgment of the circuit court is consequently reversed and the cause remanded with directions to that court to enter up a judgment dismissing the claim of the legatee and of the executor and awarding the fund to plaintiff in error, Katherine DuMontimer. *Nortoni* and *Allen, JJ.*, concur.