JOHN J. BRODRICK, administrator *de bonis non, vs.* JAMES
O'CONNOR & others.

Berkshire.    September 17, 1929. — May 26, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Probate Court,* Report of evidence, Order nunc pro tunc, Findings by
judge.  *Gift.  Savings Bank.*

Upon an appeal from a decree of a probate court after hearing of a peti-
tion, the judge made a report of his findings of fact under G. L. c. 215,
§ 11.  The appellant thereupon filed a motion that the "stenographer
by whom the testimony at the hearing on the merits of this case was
reported" be appointed a commissioner to report the testimony to this
court and that such appointment be made as of the date on which
the hearing on the merits was commenced.  The motion was sup-
ported by an affidavit setting out that the attorney for the appellant
before the hearing opened requested that the evidence be taken so as
to be reported to this court.  No such request was made in writing
filed in the case.  A decree was entered denying the motion, it being
recited therein that it appeared to the judge that no request that the
evidence be reported was made before evidence was offered.  *Held,*
that

(1) The appellant was not entitled as of right to have the evidence
reported unless he requested it before any evidence was offered at the
hearing;

(2) In the circumstances, it was a question of fact whether the
appellant's counsel had made such a request orally;

(3) In deciding that question, the judge properly could use his
personal knowledge of the matter: he was not required to depend
solely on the affidavit;

(4) The finding by the judge was conclusive;

(5) Whether the motion ought to have been granted in the circum-
stances rested in the discretion of the judge; and, no abuse of dis-
cretion appearing, there was no error in the denial.

A judge of probate who heard a petition by an administrator for an ad-
judication of the ownership of certain savings bank deposits, found
that the bank books were in the name of the intestate "and/or" his
sister, some of them in addition expressly being made payable to either
or the survivor, and one being in the name of the sister alone with an
addition of the words, "May be drawn by" the intestate; that as to
several of the joint accounts, the sister did not sign a signature card;
that the sister had been the intestate's housekeeper and for many
years had sacrificed herself and her future for his benefit; that one
group of the bank books had been left for many years in the sister's

room at the intestate's residence; that he told her several times that he had provided for her well by means thereof; that she thanked him on different occasions for the gift which he had made to her; that he told his friends that he had given those books to her in return for what she had done for him; that, after they had discussed the possibility of those books being stolen from the intestate's house, he placed them in a safe deposit box at a bank to which he and the sister had an equal right of access; that, after his death, those books were found in the box with a writing stating that they were the property of the sister and of another; that the sister was in constructive possession of those books; that another group of books had been always in the possession of the sister at her home; and that the intestate had made a gift of both groups of books to the sister. A decree was entered adjudging them to be her property. Upon appeal, the judge reported such findings under G. L. c. 215, § 11. There was no report of the evidence. *Held*, that

(1) The only question before this court was whether the conclusion reached was consistent with the facts found and whether the decree was within the scope of the petition and supported by the facts found;

(2) The facts were sufficient to show a completed gift of the first group of books before they were placed in the bank;

(3) The circumstance, that for reasons of safety those books were removed from the possession of the sister and placed in the safe deposit box, did not require a conclusion as a matter of law either that there had not been a previous gift of them or that the sister, by redelivering them to the intestate to be placed in the safe deposit box, intended to give them back to him;

(4) The failure of the sister to sign the signature cards did not affect her right to those books in the circumstances;

(5) The form of the savings deposits was not incompatible with the judge's conclusion;

(6) That conclusion with regard to both groups of books was supported by the facts found and must stand;

(7) The decree must be affirmed.

PETITION, filed in the Probate Court for the county of Berkshire on May 26, 1928, by the administrator of the estate of Thomas C. O'Connor, late of Adams, for an adjudication as to the ownership of certain bank deposits.

After the death of the petitioner, the petition was prosecuted by one appointed administrator *de bonis non* of said O'Connor's estate. The petition was heard by *Robinson*, J. By his order, a decree was entered adjudging that the deposits were the property of the respondent Belinda M. O'Connor. Certain other respondents appealed. The judge made a report of the facts under G. L. c. 215, § 11. Material facts and proceedings relative to a motion by

certain respondents for a report of the testimony are described in the opinion.  They appealed from a decree denying said motion.

*A. F. Flint,* for James O'Connor and others.

*D. P. Callahan,* for Belinda O'Connor.

No argument nor brief for the petitioner.

Rugg, C.J.  This is a petition by the administrator of the estate of Thomas C. O'Connor for adjudication as to the ownership of numerous deposits in savings banks in this Commonwealth.  The issues raised were contested on the one side by certain heirs at law of the intestate and on the other by Belinda M. O'Connor.  The judge of probate after hearing made a finding in favor of Belinda M. O'Connor, and entered a final decree adjudging that she was the sole and absolute owner of all such deposits at the time of the death of the intestate.

On request of the contesting heirs, he made a full report of facts under G. L. c. 215, § 11.  Thereafter the contesting heirs filed a motion that the "stenographer by whom the testimony at the hearing on the merits of this case, was reported" be appointed a commissioner to report the testimony to the full court and that such appointment be made as of the date on which the hearing on the merits was commenced.  This motion was supported by an affidavit setting out that the attorney for the contesting heirs before the hearing opened requested that the evidence be taken so as to be reported to the full court.  A decree was entered denying this motion, it being recited therein that it appeared to the court that no request that the evidence be reported was made before evidence was offered.

Evidence cannot be thus reported as matter of right unless request is made before any evidence is offered.  See G. L. c. 215, §§ 12, 13, 18 as amended by St. 1923, c. 392, St. 1924, c. 194, § 1; G. L. c. 214, § 24.  *Lannin* v. *Buckley,* 256 Mass. 78, 80, 81.  Whether such request was made in the case at bar was a pure question of fact.  It did not depend solely upon the affidavit presented.  If such request had been made in writing and filed with the papers in the case, there would have been no room for misunderstanding.  Therefore the

contention is and must be that the request was made to the judge orally. Whether such request was made was a subject about which he had personal knowledge. He was not dependent entirely upon affidavits. In these circumstances his finding of fact on such a matter must stand and be accepted as true. See *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 32, 33; *Commonwealth* v. *Devereaux*, 257 Mass. 391, 395.

Whether the motion ought to have been granted rested wholly in the sound discretion of the judge. No abuse of such discretion is shown. *Manning* v. *Mulrey*, 192 Mass. 547, 551. There was no error of law in the denial of this motion.

The case is to be considered on the pleadings, the facts reported and the decree entered. The question presented is whether the conclusion reached is consistent with the facts found and whether the decree is within the scope of the petition and supported by the facts found.

Apparently the money represented by the bank deposits was accumulated by the intestate. He was pastor of St. Thomas Church in the town of Adams where he had lived and where his sister Belinda had been his housekeeper. She had for many years sacrificed herself and her future for the intestate and had given him great assistance in his work. For several years before his death there had been two groups of bank books which for convenience in the record are termed respectively group A and group B. All these deposits were in the names of the intestate and/or Belinda M. O'Connor. It is not necessary to go through these books one by one and recite the precise form of words in which each deposit stood at the death of the intestate. It is enough to say that some were simply in their two names, and some expressly were made payable to either or the survivor; one was in the name of Belinda alone with these words added, "May be drawn by her brother Rev. T. C. O'Connor." Group A was made up of books which were kept for years in a suit case in the room of Belinda at the parish rectory. As to this group the finding was in these words: "I find that the bank books comprising Group A were given by the deceased to his sister, Belinda M. O'Connor, several years

prior to his death and that on several occasions said deceased told her in the presence of witnesses that by means thereof he had well provided for her. Said Belinda M. O'Connor on these different occasions thanked him for the gift he had made her and showed her appreciation therefor. At different times the deceased computed for his sister Belinda the interest which had accrued on said books . . . As time went by a discussion took place between the deceased and his sister Belinda as to the advisability of keeping said books at the rectory. Being afraid they might be stolen, the deceased finally went to the South Adams Savings Bank which is located at Adams, . . . and rented a safety deposit box . . . in the name of Thomas C. O'Connor or Belinda M. O'Connor. He received from the bank two pass keys, one of which he delivered to Belinda M. O'Connor. She had this key at all times until lost at about the time of the death of the decedent. The bank books comprising Group A were put by intestate in this safety deposit box and remained there until his death. Under the rules of the bank, in view of the fact that the box was in both names and both Belinda M. O'Connor and the intestate had keys thereto, each had equal right of access. The box at different times was taken from the bank by the deceased to Belinda, at the rectory, and the amounts, on the various bank accounts, were computed . . . I find that prior to his death the intestate had told his intimate friends . . . of the existence of the bank books described in Schedule A and had told them that he had given these bank accounts to his sister as she had given up her life for him and he felt it his duty to protect her. Belinda M. O'Connor on certain of these occasions, in the presence of her brother and of . . . [others], expressed appreciation of the gift which had been made her . . . The deceased left no will. Immediately after his death, on the written request of Belinda M. O'Connor, the South Adams Savings Bank opened the safety deposit box and the books which are specified as Group A were found therein tied together with a rubber band and inserted under the band were two slips of paper in the handwriting of the decedent, on which appeared'' a writing to the effect that the bank

books were the property of his sisters Belinda and Eliza. "I further find as a fact, from the evidence, both written and oral, that Thomas C. O'Connor, during his lifetime made a valid gift of the bank books mentioned in Schedule A to Belinda M. O'Connor who accepted said gift, assented thereto and thanked the deceased for his kindness. I further find, inasmuch as the safety deposit box at the South Adams Savings Bank was in the name of Belinda M. O'Connor and as she had a key thereto and a right to open said box at any and all times, that she had at the time of the death of the decedent constructive possession of the bank books listed in Schedule A."

The bank books in group B were also in the possession of Belinda M. O'Connor, kept by her at her home. They were thus located at the time of the death of the decedent. As to these the judge found "as a fact that the accounts mentioned in Schedule B belong to Belinda M. O'Connor and were in her possession at the time of the death of the decedent."

As to the deposits comprised in group A the finding of the judge is categorical to the effect that they were given by the deceased to his sister several years prior to his death, that the gift was discussed between them and their friends, and that she thanked him for his generosity. The books were delivered into her possession and were kept for a considerable time in her room. These facts are sufficient to show a completed gift. The terms of the deposits are consistent with the gift. The circumstance that for reasons of safety the books were removed from the possession of the sister and placed in a safe deposit box in a bank to which both the deceased and his sister held a key does not as matter of law militate against the effect of the prior gift. *Eastman* v. *Woronoco Savings Bank*, 136 Mass. 208. *Bone* v. *Holmes*, 195 Mass. 495. *McKenna* v. *McKenna*, 260 Mass. 481, 485. There are no facts which compel the conclusion that the redelivery of the books to the brother for the purpose of being placed in the safe deposit box under the circumstances stated was made by Belinda with the intention of giving the property back to her brother. Those of the deposits made expressly payable to either the deceased or his sister

or to the survivor of them are governed by the principle declared in *Chippendale* v. *North Adams Savings Bank*, 222 Mass. 499, 501–503. That rests upon the theory of a contract and vested the entire deposits in Belinda upon the death of her brother. The deposits made in the name of the brother or his sister are governed by the authority of *Marble* v. *Treasurer & Receiver General*, 245 Mass. 504, 508, 509.

As to group B there is the additional factor that the books were delivered to Belinda as gifts and were continuously kept by her in her own custody. It cannot be doubted that title to these vested in her. The deposit made in the name of Belinda alone manifestly could have been found to belong to her.

The finding as to both groups is explicit that there was a gift of the books and the deposits represented thereby by the intestate during his life. Since the evidence is not reported, that finding cannot be pronounced unwarranted. The form of the deposits is not incompatible with the general finding. It is not necessary to examine in detail the effect of the form of each particular deposit if it stood apart from the general explicit finding. The failure of the sister Belinda in some instances to sign the signature cards at the bank does not affect her right to the deposit if the intent of the parties is otherwise clear. *Perry* v. *Leveroni*, 252 Mass. 390. This general conclusion is supported by *Battles* v. *Millbury Savings Bank*, 250 Mass. 180, *Chase* v. *Smith*, 257 Mass. 252, *Graham* v. *Barnes*, 259 Mass. 534, and *McKenna* v. *McKenna*, 260 Mass. 481. There is nothing inconsistent with this conclusion in cases like *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576, or *R. H. White Co.* v. *Lees*, 267 Mass. 112.

*Decrees affirmed.*