Charles M. WANTUCK, Executor of the Estate of Louis H. Mengerhausen, Deceased, Plaintiff-Appellant,

v.

UNITED SAVINGS AND LOAN ASSOCIATION, Defendant,

and

St. John Evangelical and Reformed Church, a Corporation, Defendant-Respondent.

No. 54960.

Supreme Court of Missouri, En Banc.

Jan. 11, 1971.

Charles M. Wantuck, Springfield, for plaintiff-appellant.

Neale, Newman, Bradshaw & Freeman, Jean Paul Bradshaw, Joseph A. Bohrer, Richard Owensby, Springfield, for defendant-respondent, St. John Evangelical and Reformed Church—The United Church of Christ.

ROBERT G. BRADY, Special Judge.

This is a declaratory judgment action brought to determine the ownership of a $10,000.00 investment account represented by a certificate issued by United Savings and Loan Association (hereinafter referred to as United) reading: " * * * Louis H. Mengerhausen and St. John Evangelical and Reformed Church, the United Church of Christ, as joint tenants with right of survivorship." Mr. Mengerhausen is deceased and defendant claims the account as a surviving joint tenant. Plaintiff is deceased's

executor. The trial court found for the church. The Springfield Court of Appeals reversed that judgment. On application this court ordered the cause transferred.

The deceased had established this savings account in 1963. On April 15, 1966 he signed a letter addressed to United reading: "I hereby authorize you to add St. John's Evangelical and Reformed Church—The United Church of Christ to Savings Account No. 1814. This leaves the account to read Louis H. Mengerhausen and St. John's Evangelical and Reformed Church—The United Church of Christ, as joint tenants with right of survivorship." [1]

In July of 1966, on United's advice that a different type of account would make a more profitable investment, deceased had the account changed to what is known as an investment account. At that time a certificate was issued to "Louis H. Mengerhausen and St. John's Evangelical and Reformed Church, The United Church of Christ, as joint tenants with right of survivorship." There was no written authority to issue this certificate in joint names, but the certificate bears a notice on the upper left corner "Replace Sa. #1814. Div. fr. 7–1–66." The certificate was delivered to deceased who put it in his safety deposit box where it was found after his demise.

When he established the original savings account deceased signed a signature card. United's rules did not require both parties to a joint account to sign the signature card or require a new card when the account was changed from a single owner or when the savings certificate was changed

---

1. Section 369.150(1) (2), V.A.M.S., provides that a certificate issued in the name of two or more persons, and " * * * in form to be paid to any one or more of them, or the survivor or survivors of them * * * shall become the property of such persons as joint tenants * * * and may be paid to any person named therein, or the survivor or survivors of them." This section of our statutes has been held to create a rebuttable presumption that a deposit made thereunder becomes the property of those named as

joint tenants with the right of survivorship. Jenkins v. Meyer, Mo., 380 S.W.2d 315, 1. c. 320 [4]. See also 362.470, V.A.M.S., as to Banks and Trust Companies. The letter used the conjunctive "and" rather than the disjunctive "or" used in the statute. But the phrase "as joint tenants with the right of survivorship" overcomes such a technical objection. As we view this case, if anything was created by the deceased's actions, it was a joint tenancy.

to an investment account. The church never signed nor saw such a card for this account. United issues only one certificate to each joint account. Surrender of that certificate with proof of identity is required to obtain payment. United made the checks representing the interest on the account solely to deceased until informed of his death. The evidence is undisputed that the church knew nothing of this transaction never having seen the certificate or been informed of its existence or deceased's actions in any manner until October of 1967. Deceased's death had occurred in December of 1966.

The church contends deceased's actions created a joint tenancy and that as the surviving tenant it is entitled to ownership of the funds represented by the certificate. Plaintiff contends there was no completed inter vivos gift by the deceased to the church with the result that the parties are not joint tenants with right of survivorship.

■ Joint tenancy is not a doctrine favored in the United States, and the common law rule that a conveyance to two or more persons was deemed to create a joint tenancy with right of survivorship unless a contrary intent appeared has been generally abrogated.[2] The parties here involved cannot be joint tenants unless that relation-

ship arises as the result of the deceased-donor's action in directing United to place the church's name upon the certificate; in short, only as the result of a valid inter vivos gift.[3]

■ The essentials of an inter vivos gift of personal property were stated in Thomas v. Thomas, 107 Mo. 459, 18 S.W. 27, 1. c. 28, quoted with approval in Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, 1. c. 144, and more recently in In re Estate of Simms, Mo., 423 S.W.2d 758, 1. c. 762 [2]. They are: "* * * a present intention to make a gift on the part of the donor, a delivery of the property by the donor to the donee, and an acceptance by the donee, whose ownership takes effect immediately and absolutely."

■ All of these elements must be present and the absence of any defeats the gift. As we view this case the real dispute is as to the requirement of delivery and the immediate and absolute ownership by the church. While no particular form is necessary to effect delivery (that element being intended only to evidence the purpose of the grantor to give effect to the instrument, Rumsey v. Otis, 133 Mo. 85, 34 S.W. 551, 1. c. 553), the law requires a completed delivery of the subject matter of the gift or of the document evidencing that subject

2. Johnston v. Johnston, 173 Mo. 91, 73 S.W. 202, contains a learned discussion of the question with extensive citations. Among them is Rodney v. Landeau, 104 Mo. 251, 15 S.W. 962. As a further example of the attitude generally prevalent in this country see the historical note following Sec. 1.010, V.A.M.S., reciting the act of the Third Territorial Assembly of January 19, 1816, which in Paragraph 2 thereof states: "The doctrine of survivorship in cases of joint tenants shall never be allowed, in this territory." See also the cases cited in 14 Am.Jur., Cotenancy, p. 84, Sec. 12, and 20 Am.Jur.2d, Cotenancy and Joint Ownership, p. 102, Sec. 11. See also Sec. 442.450, V.A.M.S., stating that every interest in real estate granted or devised to two or more persons other than executors and trustees, and husbands and wives shall be a tenancy in common un-

less expressly declared to be a joint tenancy. It is doubtless for this reason that banks and trust companies, and savings and loan institutions found it both necessary and convenient to secure the enactment of Sections 362.470 and 369.150, V.A.M.S.

3. There is no contention there was a gift causa mortis and the very language of the instrument would seem to defeat that theory. The gift must be inter vivos if it is to take effect at all for the reason that: "A gift to take effect not during the donor's lifetime but at the donor's death is testamentary in character, Wahl v. Wahl, 357 Mo. 89, 206 S.W.2d 334; Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, creates no present interest, and cannot form the basis of a joint tenancy." Jenkins v. Meyer, Mo., 380 S.W.2d 315, 1. c. 322 [11].

matter. Napier v. Eigel, 350 Mo. 111, 164 S.W.2d 908, 1. c. 911, specifically holds: "A mere uncompleted intention to grant an interest at death, or at some time in the future, or upon the happening of some contingency is not enough. Nor do we think that proof of intention alone, even to grant a present interest, would suffice without proof of conduct showing the carrying out or fulfillment of that intention. Since the claimed donation would be beneficial, it may be that acceptance by respondent could be presumed even though she was without knowledge of it. Also, it is true that one joint owner may hold property for the benefit of all the joint owners. *Yet, we think it was necessary to show a delivery of the property by Dr. Napier, actual, constructive or symbolical, by showing some conduct on her part indicating a change of the character of her possession from that of sole owner to that of a co-tenant.*" (Emphasis supplied.) The case also holds that the principles governing a gift of the property are equally applicable to that of the grant of an interest therein.

■ The church contends that under the circumstances of this case delivery was unnecessary. It relies upon Commonwealth Trust Co. v. Du Montimer, 193 Mo.App. 290, 183 S.W. 1137, where at 1. c. 1139 it is said: "In 14 Am. & Eng. Ency. of Law (2d Ed.) p. 1019, it is said: 'Where one person gives to another a joint interest in property with himself, no delivery to the donee is necessary, the possession of the donor being also that of the donee. * * '" This quotation does not bespeak a rule contrary to that stated in Napier, supra, but instead has reference to the exception recognized in that line of cases exemplified by Rumsey v. Otis, supra, to the effect that in determining whether there has been a valid delivery the law will presume much more in favor of the presence of that element "* * * in cases of voluntary settlements in favor of a wife, child, or near relative than it does in ordinary cases of bargain and sale between strangers. (Citing cases)" In Napier, supra, the court put the quotation upon which the church relies in proper perspective as an exception to the quantum of proof required to show delivery in those cases involving parties within a family relationship by holding the authorities cited in 14 Am. & Eng.Ency. of Law have reference only to situations involving that relationship.[4] It follows that cases such as Commonwealth Trust Company v. Du Montimer, supra, and Longacre v. Knowles, supra, must be read in the light of the fact that a family relationship existed between the donor and donee, and absent such circumstances do not constitute authority to support the contention for which they are cited. Napier further held the rationale for the requirement of delivery was public policy so as to prevent mistake, imposition and perjury. We hold

---

4. This family relationship presumption recognized in the Napier case as between sisters was extended in Longacre v. Knowles, Mo., 333 S.W.2d 67, to an uncle and nephew relationship. There are many cases recognizing the presumption and abrogating the requirement of delivery as between parent and child. Du Montimer, supra, was a case involving brother and sister. In Wahl v. Wahl, 357 Mo. 89, 206 S.W.2d 334, the presumption of delivery was further extended to plaintiffs who were children of a sister of deceased's first wife whom he had reared in his home and educated and whom he trusted and "considered almost as his own children." Analyses of cases from other jurisdictions cited and relied upon by the church give further illustration of the family relationship doctrine. These are: Kelberger v. First Federal Savings & Loan Ass'n, 270 Wis. 434, 71 N.W.2d 257 (sisters); Brodrick v. O'Connor, 271 Mass. 240, 171 N.E. 479 (brother and sister); Hershey v. Bowers, 7 Ohio St.2d 4, 218 N.E.2d 455 (father and daughter); Rhorbacker v. Citizens Bldg. Ass'n Co., 138 Ohio St. 273, 34 N.E.2d 751 (the exact nature of the family relationship does not clearly appear but there is no doubt that one existed. Apparently the parties were sisters or sisters-in-law. This case is of particular importance for the dissent which is on the basis that no gift was consummated); and In re Estate of Smith, 199 Kan. 89, 427 P.2d 443 (mother and son).

there must be delivery to sustain a valid inter vivos gift and that exception to the general rule requiring delivery allowing for a presumption as to the presence of that element in cases where a family relationship exists should not be extended to the parties in the instant appeal.

■ It follows that a delivery, be it actual, constructive or symbolic, is necessary before a valid inter vivos gift can be consummated and that the test to determine the existence of an actual constructive or symbolic delivery is that there must be some conduct on the part of the donor indicating a change in the character of his possession from that of sole owner to that of joint tenant.

■ This record is totally devoid of any evidence of such conduct on the part of the deceased. It is undisputed that United under its rules issued only one certificate and that the surrender of that certificate was required to obtain payment of the amount evidenced thereby. It is likewise undisputed that the deceased kept possession of the certificate. Under such circumstances there was no loss of power or dominion by the deceased over the account so as to indicate a change of the character of his possession from that of sole owner to that of joint tenant. At any time after the alleged gift and prior to his death deceased could have surrendered the certificate and demanded payment of any or all the money to him, and United would have had no alternative but to so pay. He could have done what he wished with the money even to the extent of taking out another certificate, worded in the same language as that involved here but with another party's name substituted for that of the church. Deceased surrendered nothing— literally or figuratively.

It is equally clear deceased's conduct did not confer any dominion over the certificate upon the church. As previously indicated, the church did not have the certificate and thus could not have required United to pay any portion of the account to it. Neither did deceased's action confer any right upon the church the exercise of which would enable it to gain control over the certificate or the account. It could not have replevied or maintained some other possessory action for the amount. To do so the church would have had to base its claim upon its joint tenancy with deceased and that very theory would defeat its right to possession for, provided the parties are in fact and in law joint tenants, deceased's possession was that of both parties. The complete unilateral power of revocation retained by deceased under the facts of this case is totally inconsistent with the existence of a consummated inter vivos gift.

In essence, the church's position is the contention that to deny the requisite delivery under the facts of the instant case would be to prohibit the creation of joint tenancy by one who owned the subject property absent a transfer to a third party with a transfer back to both of them. While we agree that such technical requirements have rightly been long since done away with, we cannot agree such a result inevitably flows from requiring some actual, constructive or symbolic delivery in the instant case. The facts necessary to indicate the required delivery must necessarily vary with each case. In the instant case there is something that deceased could have done which would have indicated the change in the character of his possession from that of sole owner to that of joint tenant. The deceased could have informed the church of his action in placing its name upon the certificate. It is undisputed he did not do so and the church argues that this failure is of no significance. This may be true in some cases [5] but it is not true in

---

5. Assume the subject matter of the gift is a stock certificate which the donor surrenders informing the company he wishes a new certificate issued in the name of himself and the donee as joint tenants. A new stock certificate is so issued. The company issuing the certificate could not thereafter take any action with respect to

the instant appeal. It is true that had notice been given to the church it could not have gained dominion or control over the certificate or the account to the extent of collecting some or all of it. It needed the certificate for that and, as previously noted, notice would not have entitled it to possession. But notice to the church by deceased would have constituted conduct indicating the change of the character of deceased's possession from that of sole owner to that of joint tenant. This because the church could thereafter act under the provisions of Section 369.150(3), supra, by giving United a written notice that it was no longer to pay the account solely to the deceased and if the notice was received by United in the time and form provided by the statute, payment thereafter to deceased would not have constituted release and discharge to United. Under such facts deceased would have surrendered and the church would have acquired some right to, dominion or control over the account regardless of whether it ever sent the notice or not. The choice of whether to exercise that right thereafter belonged to the church and was beyond deceased's unilateral recall.

Here the deceased surrendered neither the actual power and control over the account nor any right with respect to it. None of his actions indicates any change in the character of his possession of the certificate from the sole ownership, which existed prior to his direction to United to place the church's name on the certificate, to the joint ownership which the church alleges thereafter existed. Under such circumstances there was no valid inter vivos gift from the deceased to the church.

■ In its additional brief filed before this court upon transfer of this cause from the Springfield Court of Appeals, the Church advances the contention that: "* * * the church as a third party donee beneficiary has a right to enforce this written agreement made for its benefit even though not signed by it." In his additional brief the executor contends that the matter is not properly before us on appeal for the reason that the church did not proceed on that theory in the trial court nor in the court of appeals. An examination of the transcript discloses that the "contractual theory" was not set out in any of the pleadings filed by the church and neither was it stated in the brief of respondent filed with the court of appeals. An examination of that brief discloses that the church's contention throughout the trial and its appearance before the court of appeals was that as stated in its brief: "* * * The real issue is a determination of whether Mr. Mengerhausen intended to, and *did, make a present gift of an interest in this investment account* in the form of a joint tenancy to his church with right of survivorship conditioned upon the incorporated religious association's being in existence at his death." (Emphasis supplied.) Under such conditions the matter is not properly before us.

Our decision there was no gift renders ruling the other issues in this appeal unnecessary. The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment in favor of plaintiff.

it absent the consent of the donee without subjecting itself to possible liability. The note in Longacre v. Knowles, supra, affords another illustration. In that case Gus Longacre directed the note be made payable to himself "* * * and/or Joe N. Longacre, or survivor". The note was so made out, signed by the maker and delivered to Gus. Gus, the donor, thus placed it in the power of another, the maker of the note, to pay Joe Longacre if the maker so desired. Thus another could defeat Gus' claim irrespective of his wishes and his surrender of that power is sufficient to establish delivery. In each of these instances knowledge by the donee that he had been made a joint tenant in the subject matter of the gift is unimportant as the consequences evidencing delivery flow from the actions of the donor irrespective of and independent from the donee's knowledge. The instant case presents a different situation.

HENLEY, C. J., and DONNELLY and MORGAN, JJ., concur.

FINCH, J., concurs in result in separate concurring opinion filed.

SEILER and HOLMAN, JJ., concur in result and concur in separate concurring opinion of FINCH, J.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.

FINCH, Judge (concurring).

I have concluded to concur in result but on a basis which, although briefed, is not relied upon in the principal opinion in deciding the case. I would reverse and remand with directions to enter judgment for plaintiff because respondent church, a corporation, is incapable of holding property in joint tenancy with a natural person.

There are no Missouri cases on this subject, but the question has been considered elsewhere and by textwriters and they seem to be unanimous in stating that a corporation may not be a joint tenant.

In Telfair v. Howe, 3 Rich.Eq. 235, 24 S.C.Eq. 235, 1. c. 242, the opinion states: "The Bible Society of New York is a corporate body. It is clear that, by the principles of common law, none but natural persons can take in joint tenancy. A corporation cannot take this estate, either jointly with another corporation, or with a natural person."

In Moore Lumber Co. v. Behrman, 144 Misc. 291, 259 N.Y.S. 248, 1. c. 250, the court holds that "a corporation cannot hold as a joint tenant, either with an individual or another corporation." This opinion, incidentally, is discussed in 17 Minn.Law Review 339, which also recognizes the common law on this subject.

In De Witt v. San Francisco, 2 Cal. 289, the court held that the County of San Francisco and the City of San Francisco, both of which were corporations, could not hold lands as joint tenants, saying 1. c. 297: "Two corporations cannot hold as *joint tenants*, because two of the essential unities are wanting, namely, of the same capacity and title; 1 Cruise, 362, sec. 39. Nor can they hold as joint tenants, for another reason; being each perpetual, there can be no survivorship between them; and this, as we have just seen, is the distinguishing incident of this estate. Nor can a corporation hold lands as joint tenant with a natural person, for there is no reciprocity of survivorship between them. Angel and Ames on Corporations, 150. 1 Kyd on Corp. 72."

Angell & Ames on Corporations, 11th Ed., § 185, p. 166, states: "A corporation aggregate cannot hold lands in joint tenancy with a natural person, because, as the corporation never dies, the natural person would be subject to, without being able to take advantage of, the incident of survivorship; nor with another corporation, since both are perpetual, or one or both of fixed limited duration."

The American Law of Property, § 12.76, p. 342, states: "A corporation is a legal entity and is thus qualified, except as restricted by statute or its articles of incorporation, to acquire and hold title to real property. But in the nature of things it cannot hold title in joint tenancy." The same work, § 6.3, note 4, p. 13, says: "Since a corporation cannot hold as a joint tenant because of the absence of survivability, a corporate trustee must necessarily hold as a tenant in common."

In 4 Thompson on Corporations, § 2457, p. 46, it is stated: "But in the nature of things a corporation can not take and hold land in joint tenancy."

In 48 C.J.S. Joint Tenancy § 3a, p. 914, it is stated: "Any person mentally competent to deal with the subject before him with full understanding of his rights is competent to create a joint tenancy, and as a general rule all natural persons are

capable of being joint tenants; but bodies politic or corporations, as discussed in Corporations § 1088c, cannot be joint tenants either among themselves or with natural persons." In 19 C.J.S. Corporations § 1088 c, p. 630, it is stated: "From the nature of a corporation it is incapable of taking and holding lands in joint tenancy, either with another corporation or with a natural person. There is nothing, however, to prevent a corporation from taking and holding land as tenant in common with another, since for this estate only unity of possession is necessary. A corporation cannot take personal property as joint tenant, but may take as tenant in common."

At common law, joint tenancies were favored, but even so corporations could not be joint tenants. Later, as the principal opinion recognizes, the tendency has been to treat estates given to a plurality of persons as tenancies in common rather than joint tenancies, unless expressly stated otherwise. 48 C.J.S. Joint Tenancy § 3d, p. 917.[1] That being true, it seems to me that, absent express statutory authorization to the contrary, we should hold as at common law that a corporation may not be a joint tenant.

I prefer to decide this case on the basis indicated rather than that relied upon in the principal opinion, because while I believe the principal opinion correctly follows the rule as announced in earlier cases, I am disturbed by two things incident to that rule.

In the first place, I see absolutely no logical basis for holding that specific acts will create a joint tenancy where there is a family relationship between donor and donee but that such acts are insufficient to show delivery and create a joint tenancy when such relationship does not exist. I realize the cases say that, but I do not believe the rule is sound. If what is done

is sufficient to create a joint tenancy as between relatives, it should be effective irrespective of the relationship between the persons involved.

Secondly, I am disturbed by the fact that the General Assembly has provided in § 369.150, V.A.M.S., that when an account is established as specified in that section, a joint tenancy shall be created, and yet under the rule announced in the principal opinion, and in other cases on which it relies, compliance with that statute does not necessarily result in the creation of a joint tenancy. This is true even though the statute is not held unconstitutional or invalid. Surely, this statute, and other similar ones, if permitted to remain as valid statutes, should be so amended that when complied with, the result will be what the statute says will occur and what undoubtedly the parties think will occur when they comply with that statute.

---

1. This philosophy appears in § 442.450, V.A.M.S., for example, which provides that conveyances of real estate to two or more persons, not executors, trustees, or husband and wife, shall be tenancies in common, unless expressly declared to be joint tenancies.