In the Matter of the Estate of JOHN MARTIN, deceased, MILTON MARTIN, Appellant, v. LEON J. MARTIN, Executor, et al., Respondents.*

Kansas City Court of Appeals. November 10, 1924.

1. **EXECUTORS AND ADMINISTRATORS: Burden of Proof: In Action to Discover Assets of Estate Burden of Proof is upon Party Claiming Ownership Thereof to Establish the Same by Clear and Convincing Proof.** In an action under sections 62 to 66 inclusive, Revised Statutes 1919, to discover and recover assets of an estate, where prima-facie case was made against defendants, claiming property belonging to said estate, the burden of proof was upon them to establish their ownership thereof by proof clear, full, unequivocal and convincing to the judicial mind.

2. **GIFTS: Elements Constituting Gift Inter Vivos Stated.** To constitute a valid gift *inter vivos* there must be an actual and complete delivery of the thing given in which the donor, in his lifetime parts with possession and control over the subject of the gift, with an intent to receive and an acceptance of the gift on part of donee.

3. ———: **Trusts: Intended but Imperfect Gift Cannot be Treated as Executed Trust.** An intended gift which is imperfect as such cannot be treated as an executed trust.

(51)

In re Martin v. Martin.

4. **HUSBAND AND WIFE: Estate by Entirety: Evidence Held to Establish Intent to Create Estates by Entirety in Proceeds of Notes.** Evidence as to changes in endorsements on notes *held* to establish estates in entirety in the proceeds of the notes.

5. ——: ——: **Delivery not Necessary to Create Estate by Entirety.** Delivery not necessary to create an estate by entirety in notes.

6. **BILLS AND NOTES: Indorsee Has Right to Strike Out Endorsement and Have Another Substituted Therefor.** Under sections 817, 820, 834 and 835, Revised Statutes 1919, indorsee of notes had right to strike out indorsement, and have another and different indorsement substituted by his transferor, though transferor at time of substituted indorsement had no title.

7. ——: **Right to Transfer Note Cannot be Questioned by Maker nor Collaterally Attacked by Persons not Parties to Note.** Lawful possession of note confers on holder right to transfer it, which cannot be questioned by maker nor collaterally attacked by persons not parties to note.

8. **EVIDENCE: Evidence of Transferor That Note Claimed by Estate was Property of Defendants Held not Objectionable as Expression of Opinion.** Where witness on cross-examination was not asked to state his opinion of ownership of note, but as to what he had told defendants' relative to his opinion that note was their property, evidence *held* admissible and not objectionable as an expression of opinion of witness.

9. **WILLS: Defendants Agreeing to Equal Division of Estate Held not Estopped from Claiming Notes Held by Them and Their Decedent by Entireties as Against Other Heirs.** Even though defendants had agreed, notwithstanding will, to divide decedent's property equally, they were not estopped from claiming two notes which decedent and defendants owned by entireties, as such notes were not a part of said estate.

*Corpus Juris-Cyc. References; Bills and Notes, 8 C. J., p. 336, n. 67, 68; p. 350, n. 94; p. 372, n. 59, 59 New; p. 386, n. 43. Evidence, 22 C. J., p. 534, n. 83 New. Executors and Administrators, 23 C. J., p. 1187, n. 61. Gifts, 28 C. J., p. 629, n. 46, 50 New, 52; p. 630, n. 66. Husband and Wife, 30 C. J., p. 575, n. 25. Trusts, 39 Cyc., p. 111, n. 53. Wills, 40 Cyc., p. 2108, n. 49 New.

Appeal from the Circuit Court of Buchanan County.
—*Hon. L. A. Vories,* Judge.

AFFIRMED.

*J. V. Gaddy* and *John S. Boyer* for appellant.

*Thos. F. Ryan* for respondent.

ARNOLD, J.—This is an action under sections 62 to 66 inclusive, Revised Statutes 1919, to discover and recover certain assets of the Estate of John Martin, deceased. The facts in the case are as follows.

John Martin, father of plaintiff and defendants herein, was an aged man, a resident of Buchanan County, Mo. In 1915, he purchased from Bartlett Brothers Land Company of St. Joseph, a note for $1,000, and in 1918, he purchased likewise a note for $2,000. At the time of purchase each of the said notes had attached to it a separate slip of paper bearing the following endorsement:

"For value received, Bartlett Brothers Land & Loan Company hereby assigns the within note with coupons thereto attached, to John Martin without recourse.

"BARTLETT BROTHERS LAND & LOAN CO.,
"By A. L. BARTLETT, vice president."

After the purchase of the notes, Mr. Martin deposited them in his private box which was kept in the vaults of the Bartlett Brothers Land & Loan Company. He collected the interest on the notes until his death. A long time after the purchase of the notes, to-wit, on March 23, 1922, the original endorsements were removed from the backs of the notes, and at the solicitation and under the direction of John Martin, new and different endorsements were placed thereon. The second endorsement which was attached to the back of the $1,000 note reads:

"St. Joseph, Mo., March 23, 1922.

"For value received Bartlett Brothers Land & Loan Company hereby assigns the within note and coupons hereto attached to John Martin, or Leon J. Martin, or to the survivor, without recourse.

"BARTLETT BROTHERS LAND & LOAN COMPANY,
"By A. L. BARTLETT, vice president."

The new endorsement on the $2,000 note was the same as on the $1,000 note, except it was assigned to "John Martin, or Mary E. Panigot, or Cecilia Nunenkamp, or the survivor." On the execution of these second endorsements, the notes were replaced by John Martin in his private box, but in separate envelopes, with the proper names of the assignees on the outside thereof.·

John Martin died testate on November 5, 1922, and Leon J. Martin, one of the defendants herein qualified as executor of the estate and, as such executor, took possession of his father's private box with its contents, including the two notes in controversy, and which the said executor refused to inventory. He retained the $1,000 note which he claimed as his own property, by reason of the endorsement thereon; the $2,000 note he delivered to defendants Mary Panigot and Cecilia Nunenkamp who claimed to own same jointly, by reason of the last endorsement thereon.

An inquiry and proceeding was instituted in the probate court against Leon J. Martin, Mary Panigot and Cecilia Nunenkamp, all children of the deceased John Martin, to recover into the estate the proceeds of the two notes above mentioned, upon the allegation that the notes were the property of said estate and under the terms of the will an equal division should be made to each of the children except Mrs. Radke, a daughter, to whom the testator left a bequest of only $5. However, after the father's death, the children got together and agreed that Mrs. Radke was to share equally with the other children in the estate.

The proceeding in the probate court sought to have the two notes in controversy inventoried as the property of the estate, but that court found for defendants, holding the said notes were not the property of the estate. The case then was appealed to the circuit court of

Buchanan county where it was tried *de novo* to the court, a jury being waived by agreement of parties. No declarations of law or findings of fact were requested by either party. The finding of the court was in favor of defendants, and judgment was rendered accordingly. Plaintiff appealed.

The cause was tried in the probate court upon affidavits, answers, interrogatories, answers to interrogatories and replications thereto, all of which were duly certified and filed in the circuit court and became a part of the record.

It is insisted by plaintiff that the answers to the interrogatories made a prima-facie case against defendants and that the burden of proof therefore was upon defendants to establish the ownership which they claimed; that defendants not only had the burden to establish this ownership, but that the character of such proof must be clear, full, unequivocal and convincing to the judicial mind. This is a clear statement of the law, but whether or not a prima-facie case was in fact made against defendants is the question now before us. Plaintiff bases his contention in this respect upon the fact that the assignment of the respective notes to defendants constituted gifts *inter vivos,* and after assuming this position plaintiff bases his contention upon the facts (1) that there is no evidence of delivery; (2) no evidence of acceptance of the gifts by defendants. It is urged that to constitute a valid gift *inter vivos,* there must be an actual and complete delivery of the thing given in which the donor in his lifetime parts with possession and control over the subject of the gift; and that there must also be an intent to receive and an acceptance of the gift on the part of the donee.

It is also urged that that which was intended as a gift but which is imperfect as such, cannot be treated as an executed trust. All of which is good law and applicable to the facts in this case if (and only *if*) John Martin intended a gift *inter vivos.* Defendants insist the proof

shows it was not the intention of Martin to execute a gift *inter vivos,* but that it was his intention to establish estates in entirety in the proceeds of the notes in controversy. We are inclined to accept this theory of the case.

The testimony shows that when John Martin went to A. L. Bartlett to talk to him about a new assignment of the notes, he asked Bartlett to advise him as to how his object could best be obtained. So far as the record discloses Mr. Bartlett was the only witness testifying on this point and was the only person with whom Mr. Martin talked about the matter. Mr. Bartlett's testimony is as follows:

"Q. You say that sometime after the sale of this note to Mr. Martin there was some subsequent transaction in reference to it—please state to the court what that was. A. Mr. Martin brought the note to me one day to ask me to change the endorsement and make it read 'John Martin or Leon Martin or survivor,' which I did. I tore off the original endorsement and put on the new.

"Q. Do you recall, Mr. Bartlett, just what it was Mr. Martin said to you about this note? A. No, he wanted the note fixed.

"Q. Not your conclusion.

"THE COURT: If you can't give the words give the substance.

"THE WITNESS: He wanted the note fixed— . . . He asked me to change the endorsement on the note so as to make it possible for either himself or Mr. Leon Martin to collect either the interest or the principal; the survivor to take it.

"Q. Was he at that time advising with you about how to do that? A. I think he did. I think he asked me, perhaps—I don't know whether it was that day or not, but I think he asked me something about it prior to the time he made the endorsement."

On redirect examination this witness stated:

"Q.  Do you recall that there was an envelope prepared which contained these notes after the second endorsement, Mr. Bartlett, and placed in the box?  A. We always make an envelope when we sell a note and I am quite sure that was the case.

"Q.  Judge Ryan asked you a question as to whether or not these particular notes were not placed in envelopes with certain names on the envelopes—do you know anything about that?  A.  I am confident that was the case, because it is our custom and I am quite sure it was that way.

"Q.  Do you know whether or not Mr John Martin's name was on that envelope as well as any other name or names that might have been upon it?  A.  Prior to his death, you mean?

"Q.  Yes.  A.  Yes, sir."

We think this testimony is conclusive to the effect that John Martin desired to, and did, create an estate in entirety in the notes, and that he had no intention of making a gift *inter vivos,* in the case of either note. Plaintiff insists that in order to create an estate by the entirety, or right of survivorship, there must co-exist four unities: First, unity of interest; second, unity of title; third, unity of time, and fourth, unity of possession.  We think all these requirements are met by the facts, as shown by the testimony of A. L. Bartlett, quoted above.  Plaintiff's citations do not refute, but strengthen defendants' position in this respect.

The case of Craig v. Bradley, 153 Mo. App. 586, 134 S. W. 1081, opinion by Ellison J., discusses this question and clearly defines the law applicable to the facts in this case.  In that case William E. Bradley and Julia A. Bradley were husband and wife, without children.  They lived to an old age and died a few days apart, he on the 16th and she on the 29th of March, 1909.  He left a will giving to his wife Julia A. all his personal property during her life.  The defendant therein was appointed administrator of the estate of William E. Bradley.  Upon

the death of Julia A. the plaintiff, as public administrator, was put in charge of her estate and brought suit to recover certain personal property claimed by defendant to belong to him as administrator for her deceased husband. The personal property involved was one note for $3600, payable to William E. and Julia A. Bradley; one note of $2500 payable to William E. and Julia A. Bradley, or either of them; a deposit of $309.36 in the bank in the name of William E. and Julia A. Bradley; and also a deposit in another bank of $181.10, in the name of William E. and Julia A. Bradley.

The action was bottomed upon the claim that the property thus held was an estate in the entirety, and as such, upon the death of William E. it became the sole property of Julia. The evidence showed that the $3600 note was given as the purchase price of a tract of land owned by William and Julia as an estate in entirety. That the $2500 note was given to them for borrowed money of which Julia contributed $1083.75, which was drawn out of her separate account at the bank, and the remainder was drawn by William by check against their joint account. The evidence further showed that the deposits which constituted the joint account were made by William, and that all checks thereon were drawn by him except one for $25 drawn by Julia. The trial court found that plaintiff was entitled to the $3600 note, on the theory that besides being made payable to both, it was the proceeds of real estate held by entirety, and as such was the property of the survivor. The court further found that the note for $2500 was not held in entirety, but that plaintiff was entitled to $1083.75 of it, on the ground that it was the amount Julia put in it; and found for defendant for the balance of that note, and also for the bank account. On appeal this court held:

"The note for $3600 was not only payable to William and Julia, which alone was sufficient, but it arose from the sale of lands held by them in entirety. Undoubtedly it was an estate in entirety, and the trial court

properly ruled that upon his death the full title remained in her. Both bank accounts were made up of deposits by the husband alone, in the name of both. Whether these were held in entirety depends upon the intention. The mere direction of the husband to the bank to keep the account in their joint names is not conclusive, but it has a favorable bearing on the question in the wife's favor. Thus if a husband buys land with his own money and takes title in his wife, it will be presumed he intended it to be a provision for her. And the same is true where he causes a note to be taken in her name. [Case v. Espenschied, 169 Mo. 215.]

"We consider that the evidence and circumstances surrounding these persons, in connection with the presumption just stated, leave no doubt that it was the intention of the husband, and indeed the wife's also, that the survivor was to have the whole of the accounts. The case of Platt v. Grubb, 41 Hun 447, is much like the one before us, and it was there held that upon the death of the husband the wife took the whole account as survivor."

After a thorough and exhaustive discussion of the questions involved, this court reversed the judgment of the trial court and remanded the cause with directions to enter judgment for plaintiff. Also see Gates v. Richmond Trust Co., 220 S. W. 692, another case by this court. Whether the notes involved in the case at bar were held in entirety depends upon the intention of John Martin in directing the second endorsement. We think the testimony of A. L. Bartlett alone fully determines this question in favor of defendants' contention, and that an estate in entirety was created.

Counsel for plaintiff make the further point that a joint tenancy, or an estate in entirety, was not created for the reason that the notes in controversy, after endorsement, were not delivered to defendants before the death of John Martin. We held such a delivery not necessary to create an estate in entirety, but is nec-

essary in a gift *inter vivos*. This question was before the court in the case of Trust Co. v. Reagan, et al., 193 Mo. App. 290, 300, wherein the court cited with approval the folloiwng excerpt from 14 Am. & Eng. Encyc. of Law (2 Ed.), p. 1019:

"Where one person gives to another a joint interest in property with himself no delivery to the donee is necessary, the possession of the donor being also that of the donee. . . . Similarly where a man deposited money in a savings bank to the credit of himself or wife, or the survivor, it was held that this created a joint ownership of the fund, and that the wife was entitled to it after the husband's death as a gift from him, although she had never had possession of the pass book during his life."

There is one other point raised by plaintiff in this appeal. It is urged that the second endorsement on each of the notes was of no force and effect to pass title thereto, as the Bartlett Land & Loan Co., at the time of such endorsement, had no title thereto, and therefore had no interest to assign. Plaintiff is not questioning the legality of the first endorsement, being on a slip of paper attached to the note. In support of the contention that the second endorsement on the note was of no force or effect to pass title, plaintiff cites sections 817 and 820 Revised Statutes 1919. We have examined these sections and fail to find wherein they apply to any question involved in this appeal. Section 834, Revised Statutes 1919, states: "The holder may at any time strike out an indorsement which is not necessary to his title." And section 835 provides, "where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein. . . ."

The notes in question herein were endorsed without recourse and delivered to transferee. Under section 835, John Martin had the right to strike out the endorsement at any time and to have substituted therefor the second endorsement which established an estate in entirety.

"The lawful possession of a note confers on the holder the right to transfer it. It is a general rule of law, and the maker cannot question the right to transfer." [8 Corp. Jur. 366.] It follows that if a party to the note may not question the right to transfer, the right may not be attacked collaterally.

It is also charged that the trial court erred in admitting over objections of plaintiff the opinion of witness A. L. Bartlett that the $2,000 note was the property of two of the defendants. The record discloses that said Bartlett was at that time plaintiff's witness. He was asked on cross-examination:

"Q. And did they (meaning defendants herein) not hand you the note and you looked at the endorsement and told them it was their note? A. Yes, sir. I did."

Objection and motion to strike out were made by counsel for plaintiff on the grounds that it was immaterial and an expression of opinion of the witness. The objection and motion were properly overruled.

Note that the witness was not asked to state his opinion of the ownership of the note, but whether or not that was what he had said, it was legitimate cross-examination, and the objection and motion were properly overruled.

Plaintiff urges that defendants, by reason of their agreement to divide the estate of John Martin equally among his children, are estopped from claiming the two notes in controversy, and they were not then claiming them. This position is not tenable in the face of our ruling above that the notes were not a part of said estate.

What we have said above covers all questions raised by plaintiff We find no reversible error in the case.

The judgment is affirmed. All concur.