CLARA NAPIER, Plaintiff-Respondent, v. GEORGE EIGEL, as Executor of the Estate of AMALIE MARIE NAPIER, and GEORGE EIGEL, as Trustee Under the Will of AMALIE MARIE NAPIER, and THE WASHINGTON UNIVERSITY, a Corporation, Defendants-Appellants, and EMMAUS LUTHERAN CHURCH of St. Louis, LUTHERAN SOCIETY FOR HOMELESS CHILDREN, and the LUTHERAN ALTENHEIM SOCIETY OF MISSOURI, Defendants.—No. 38125.—164 S. W. (2d) 908.

Division One, October 6, 1942.

*Richard S. Bull* for appellant The Washington University and *John A. Eigel* for appellant George Eigel.

112

*Buder & Buder* and *G. A. Buder, Jr.,* for respondent.

CLARK, J.—Dr. Amalie M. Napier died testate in March, 1940. By her last will she provided that her entire net estate should be held in trust and certain payments made to her sister, the respondent herein, during her life and then, the property remaining, be distributed to certain religious and educational institutions.

Among the assets inventoried to and now claimed by appellants as the property of the estate were United States bonds of the par value of $2,500.00 and currency to the amount of $6,655.00, all found in a safety deposit box rented by the deceased.

The respondent, Clara Napier, as plaintiff, brought a suit in equity in the circuit court against the executor and trustee and the beneficiaries named in the will and procured a decree adjudging respondent to be the owner of said bonds and currency. The case is here on appeal by defendants.

In her petition respondent alleged that her sister, Dr. Napier, "during her lifetime created and established a joint tenancy with right of survivorship in behalf of and in the name of herself and this plaintiff," as to the property in question.

The case was tried on an agreed statement of facts supplemented by brief oral and documentary evidence from which it appears: Plaintiff and Dr. Napier were sisters and for more than

twenty years prior to the death of the latter made their home together in a residence owned by the deceased. Deceased was a practicing physician, an eye specialist, and the household expenses as well as the personal expenses of both sisters were paid by her. Plaintiff had no property or income. Deceased had rented in her own name a safe deposit box which, after her death, was found to contain the bonds and currency involved in this case and a large amount of other bonds and cash. The bonds in controversy were in two large envelopes, each bearing the endorsement: "Property of Amalie M. Napier Clara Napier 3158 Ohio Ave. St. Louis," the name "Clara Napier" and the address being in handwriting of the deceased. The cash in controversy was in a large envelope endorsed: "Emergency *property of* Dr. Amalie M. Napier and or Clara Napier," the italicized words being in print and the rest of the endorsement being in the handwriting of deceased. Seventy dollars of this cash was loose in the large envelope and the remainder was in a number of smaller envelopes contained in the large one. Some of these small envelopes bore endorsements in the handwriting of deceased, such as: "Clara or Amalie Napier in case of sickness. Special," "Clara & Amalie Napier," "Clara or Amalie Napier," "Emergency, Amalie Napier."

Plaintiff attempted to testify that she had at different times accompanied her sister to the safety deposit box, but this testimony was excluded on the objection of defendants. Mrs. Fisher, a witness for plaintiff, testified that a few days before Christmas in 1939 the deceased said she had left an envelope containing money, not stating the amount, in her safety deposit box and wanted it used for emergency, in case anything happend to her or her sister, and the survivor was to get it. On cross-examination this witness said the deceased mentioned the will, "In the event the will would be tied up" and also said something about the money being used in case of sickness.

For the defendants, employees of the trust company said they had seen deceased visit the safe deposit vault frequently, but had never seen any one accompany her.

Appellants say the proof is insufficient to establish a joint tenancy with right of survivorship because it does not show a completed gift nor the creation of a condition which vested a present interest in respondent as a joint owner.

Respondent in her brief frankly states that she does not claim "as the donee of a gift *inter vivos* or *causa mortis*." Neither does she claim the property as the beneficiary of a trust. Her claim is: "Dr. Napier intentionally and effectively created a situation . . . which embraced all the essential elements of joint ownership . . . . The creation of a joint tenancy with right of survivorship is not governed by the same rules for the making of gifts *inter vivos,* and respondent's title by virtue of survivorship is not defeated by circumstances which would have been fatal in the case of a gift."

Respondent mainly relies upon: Bunker v. Fidelity National Bank & Trust Company, 335 Mo. 305, 73 S. W. (2d) 242; In re Martin's Estate, 219 Mo. App. 51, 266 S. W. 750, and Commonwealth Trust Company v. Du Montimer, 193 Mo. App. 290, 183 S. W. 1137.

The Bunker case was decided by Division One of this court. There the evidence was that W. A. Bunker deposited certain bonds with a trust company, and took receipts showing the bonds to be the property of ''W. A. Bunker or Bertha A. Bunker, or survivor.'' After the death of W. A. Bunker we upheld the claim of Bertha A. Bunker on the theory that the deceased had created a joint tenancy by gift. In effect we said that the evidence clearly showed the intention of deceased to donate a present interest to the plaintiff as a joint tenant; that it could be reasonably inferred that plaintiff had full knowledge of and consented to the gift, and also, since the gift conferred a benefit without imposing a burden, her acceptance could be presumed. We also said that in view of his relationship to the plaintiff and his control over her business affairs, the fact that deceased retained the receipts in his possession was of no significance and quoted from 14 Am. & Eng. Enc. of Law, 2nd Ed., p. 1019; ''Where one person gives to another a joint interest in property with himself, no delivery to the donee is necessary, the possession of the donor being also that of the donee.''

In Commonwealth Trust Co. v. Du Montimer, supra, one Fitzpatrick, the owner of a savings account in a trust company, informed the company that he wanted to make the account a joint one with his sister, Mrs. Du Montimer. The trust company changed the account on its books to both names followed ▇▇▇ by the words: ''either or survivor to draw,'' and the same words were placed upon the identification card which had been issued to Fitzpatrick. Then the company sent the card to Mrs. Du Montimer for her signature and it was returned with what purported to be her signature. This card also contained a definite agreement between Fitzpatrick and Mrs. Du Montimer on the one part and the trust company on the other that the account was owned jointly; that either owner had the authority to draw and, upon the death of either, the balance should belong to the survivor. The St. Louis Court of Appeals held there was a completed donation of an interest in the fund to Mrs. Du Montimer as a joint tenant with right of survivorship.

In the case of In re Martin's Estate, supra, John Martin purchased some notes from a loan company which endorsed them without recourse and delivered them to Martin. The endorsement was on a slip of paper attached to the notes. Four years later Martin took the notes back to the loan company and had it tear off the endorsement and endorse them to himself and certain of his children or survivor. After the death of John Martin the Court of Appeals upheld the claim of his children to the notes, holding that the proof failed to show a

valid trust or a valid gift *inter vivos*, but was sufficient to establish an estate by the entirety with right of survivorship.

The Bunker case was ruled upon the theory of a valid gift *inter vivos*. True, we used a quotation which indicates that delivery is unnecessary to complete a gift of a joint interest, but that quotation was unnecessary for in that case there was an actual delivery of the bonds to a third person, the trust company, for the benefit of both joint owners, and the fact that the receipts evidencing the delivery were kept by only one of the joint owners was of no significance. The authorities cited in 14 Am. & Eng. Enc. of Law in support of the statement quoted in the Bunker case and also in In re Martin's Estate, involve property rights between husband and wife. The holding is that when a husband invests his funds and takes title in the names of himself and his wife a gift is presumed and no delivery to the wife is necessary. In such a case delivery to the husband is properly considered to be for the benefit of both.

The Commonwealth Trust Company case was also ruled on the theory of a gift *inter vivos* and the property, which was the debt owed by the trust company, was actually and presently transferred from Fitzpatrick to Fitzpatrick and his sister jointly.

The theory upon which the case of In re Martin's Estate was decided is untenable. No tenancy by the entirety could have been created for a marital relation did not exist between the alleged joint tenants. (For distinctions between an estate by the entirety and a joint tenancy, see Freeman on Co-Tenancy and Partition, 2nd Ed., p. 127, sec. 64.) The court may have reached the right result in that case, although that is doubtful, but it could have been only on the theory that Martin's acts amounted to a re-transfer of the notes to the loan company and then a delivery and endorsement back to him for the benefit of himself and co-tenants.

We think that respondent's theory in the instant case is not supported even by the case last mentioned, and certainly not by the Bunker case or the Commonwealth Trust case. The proof showed that Dr. Napier retained exclusive control of the property during her lifetime and there was no proof that respondent knew anything about the manner in which her sister had deposited the property in the safety box. It is not disputed, and in fact conceded, that the sole ownership was first vested in Dr. Napier. It was incumbent on respondent to prove such acts on the part of the doctor as would clearly show a gift or grant of a present interest in the property to respondent. A mere uncompleted intention to grant an interest at death, or at some time in the future, or upon the happening of some contingency is not enough. Nor do we think that proof of intention alone, even to grant a present interest, would suffice without proof of conduct showing the carrying out or fulfillment of that intention. Since the claimed donation would be beneficial, it may be that ac-

ceptance by respondent could be presumed even though she was without knowledge of it. Also, it is true that one joint owner may hold property for the benefit of all the joint owners. Yet, we think it was necessary to show a delivery of the property by Dr. Napier, actual, constructive or symbolical, by showing some conduct on her part indicating a change of the character of her possession ▮▮ from that of sole owner to that of a co-tenant. The evidence in this case does not meet these requirements. The legends on some of the envelopes merely indicate an intention that the property should be used for one or both of the sisters upon some emergency which might or might not happen in the future, and that is the effect of Mrs. Fisher's testimony. Endorsements on other envelopes, such as "property of Amalie M. Napier, Clara Napier," do not prove joint ownership in the face of the undisputed proof that the property solely belonged to Amalie M. Napier and absent proof of conduct showing a completed transfer. Such legends may indicate a testamentary intention that respondent should have the property if she should survive the doctor, but they do not constitute an irrevocable transfer of a present interest. There was nothing to prevent Dr. Napier from changing her mind and removing the property from the envelopes or from disposing of the property.

In Trautz v. Lemp, 329 Mo. 580, l. c. 607, 46 S. W. (2d) 135, we said:

"It is true that the legends on the envelopes as well as what testator said to the sons show an intention to give the stock to the sons, but no language, either written or spoken, although expressing an intention to give, will amount to a gift unless that intention is executed by a complete and unconditional delivery of the subject-matter of the gift, or a delivery of the written instrument by which the gift is evidenced." See also Cartall v. St. Louis Union Trust Co., 348 Mo. 372, 153 S. W. (2d) 370, and cases cited.

Respondent concedes that the proof in the instant case is insufficient to show a valid gift under the requirements of the Trautz case and other cases involving gifts *inter vivos*. While the delivery necessary to complete a gift of a partial interest in personal property may be a constructive delivery, we hold that the same principles which govern a gift of the entire property also govern the grant of an interest therein, which is essentially a gift.

The requirement of delivery to complete a gift is based upon public policy and constitutes a means of preventing mistake, imposition and perjury. (For full discussion see "Gifts" 24 Am. Jur., pp. 725-753.)

The judgment is reversed. All concur, except *Hays, J.*, absent.