GILBERT H. CLEVIDENCE, Executor of the Estate of GURRETTIE VIOLA FORSTER, Deceased, Appellant, v. MERCANTILE HOME BANK AND TRUST COMPANY, Executor of the Estate of PETER T. FORSTER, Deceased.—No. 39795.—199 S. W. (2d) 1.

Division Two, January 13, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, February 10, 1947.

*William A. Kitchen* for appellant.

908

*Harvey E. Hartz* for respondent.

■ BARRETT, C.—This is a statutory proceeding by the executor of Viola Forster's estate to discover assets. Mo. R. S. A., Secs. 63-67. The proceeding was against Mrs. Forster's husband, Peter T. Forster, and upon his death was continued against his executor, the Mercantile Home Bank and Trust Company. The executor's application to discover assets is based upon the charge that Forster wrongfully concealed certain assets, a checking account, two savings accounts, one half interest in a building and loan certificate, six Home Owner's Loan Corporation bonds and a note and mortgage, which in fact belonged to his deceased wife and should be inventoried as a part of her estate. In his answer to the executor's interrogatories Forster claimed that all the specified items were owned by him and his wife jointly with

right of survivorship and, therefore, became his property upon her death. The trial court found for Mr. Forster's executor and Mrs. Forster's executor appeals.

Peter T. Forster was a Santa Fe Railroad conductor and rented a room from Mrs. Leybourne whom he married on September 5, 1933. He was divorced from his first wife and owed her about $2,100.00 alimony. Mrs. Forster had been married twice before Forster came to live in her home. She had two sons, Donald O. and Raymond P. Woodward, by her first husband and they are the principal beneficiaries under her will, although her personal property proved insufficient to pay all of her specific bequests. Her second husband, Mr. Laybourne, died in 1930 and upon his death she received ·$5,000.00 as the beneficiary of his life insurance. Also, at the time of his death and at the time of her third marriage, she owned the property at 3928 Warwick, valued at $9,600.00 as well as some real estate mortgages and other securities. After they were married Mrs. Forster continued operating the rooming house and Mr. Forster continued as a conductor at a salary of $350.00 a month until he was retired in 1937 on a pension of $100.35 a month. Mrs. Forster died on August 24, 1938 and Mr. Forster died in April 1940. Mr. Forster's son by his first wife survives him and is the principal beneficiary of his estate.

On November 5, 1935 a safety box was rented from the Mercantile Home Safe Deposit Company. The rental contract was signed "P. T. Forster and Mrs. P. T. Forster." The company entered the names of the parties on the contract as "Forster, Mr. or Mrs. P. T." Included in the rental contract is a "Joint Deposit Agreement" signed "P. T. Forster Mrs. P. T. Forster." In part the joint deposit agreement provides that "It is agreed between the undersigned, Lessees of Safe No. M-103, . . . that all property heretofore, now or hereafter placed or contained in said safe . . . now does and shall, . . . belong to the Lessees jointly as joint tenants with right of survivorship therein, and may be withdrawn or removed therefrom, in whole or in part, by all or any one or more of the Lessees; and upon the death of any one or more·of the Lessees . . . the title to all property then contained in such safe . . . shall be in the survivors jointly, with the right of survivorship therein or in the sole survivor if there be but one, . . ." Both Mr. and Mrs. Forster had keys to the box and the admittance slips introduced in evidence show that during 1935, 1936, 1937 and 1938 Mr. Forster entered the box ten times, Mrs. Forster twice, Mr. and Mrs. Forster once and Mr. Forster and a bank official, after Mrs. Forster's death, once on August 29, 1938. On that day the contents of the safety box were inventoried and twelve items of value were listed as well as miscellaneous papers of no apparent value. Also listed on the safety box inventory were the balances in a checking account and the balance in a savings account.

■ The three items found in the box, specifically involved in this proceeding, were a $5,000.00 certificate of the Rockhill Federal Savings and Loan Association payable to "P. T. Forster and/or Gurrettie V. Forster or the survivor of either"; a $400.00 note, secured by a mortgage, payable to "Gretta Forster and Peter Forster" and six Home Owner's Loan Corporation bonds of the value of $875.00.

In addition to these items Mrs. Forster's executor claims the $507.59 balance of a checking account in the Mercantile Home Bank and Trust Company. This account was opened on June 30, 1934 with a deposit of $120.00. The account was carried on the bank's ledger sheets in the names of "Mr. or Mrs. P. T. Forster." The signature card for the checking account was carried in the name of "Mr. or Mrs. P. T. Forster" and on the card, stamped in red type, were the words "either of them or to the survivor in case of the death of either." Mr. Forster had signed the card and Mrs. Forster's signature appears to have been pasted on the card. The account, from the time it was opened in 1934 until Mrs. Forster's death in 1938, was rather active both as to deposits and withdrawals. Mrs. Forster's executor also claims the balance in two savings accounts, $2,983.36 and $1,205.79. The $2,983.36 balance was in savings account No. 11357 and was opened by Mr. Forster on the 16th day of December 1935 by the deposit of $1,000.00. Also in this account were two previous savings accounts opened by Mr. Forster, one, No. 25256 with a balance of $404.37, which he transferred into account No. 4299 to himself and his wife or survivor and subsequently, when it reached $2,199.48 was transferred into this account. The bank's ledger sheet carried the account in the names of "Mr. or Mrs. P. T. Forster" and stamped on the sheet were the words "either of them or the survivor in case of the death of either." Also on the card underneath Mr. Forster's signature is the penciled notation "Mrs. to come." The signature card for this account is signed "P. T. Forster Mrs. P. T. Forster" and opposite her signature is stamped the words "either of them or to the survivor in case of the death of either." The $1,205.79 balance was in a savings account opened September 10, 1937 by Mrs. Forster and carried on a ledger sheet "Viola Forster & P. T. Forster." The survivorship agreement was not stamped on the ledger sheet but the signature card was signed by both of them and bore the survivorship stamp.

■ As to the bank deposits Mrs. Forster's executor concedes, since they were in the "name of such depositor and another person (Mr. and Mrs. Forster) and in form to be paid to either or the survivor of them," that there is a presumption that they were jointly owned,—"such deposit thereupon and any additions thereto made by either of such persons, . . . shall become the property of such persons as joint tenants, . . . " Mo. R. S. A., Sec. 7996. But he contends that the evidence in this proceeding overcomes the presump-

tion and shows that joint ownership was not intended or in fact conferred. Napier v. Eigel, 350 Mo. 111, 164 S. W. (2d) 908; Mercantile Bank v. Haley (Mo. App.), 179 S. W. (2d) 916; Schnur v. Dunker (Mo. App.), 38 S. W. (2d) 282. He then argues, the presumption being overcome, that the only claim Mr. Forster's executor could have to any of this property would be by reason of a gift from Mrs. Forster to her husband, which the evidence fails to show.

Mrs. Forster's executor attempted to demonstrate that all the bank accounts and property involved in this proceeding had their origin in Mrs. Forster's separate personal estate and in fact remained her separate property. For example, in 1930 Mrs. Forster purchased from the Holmes Mortgage Company, presumably from the proceeds of Mr. Laybourne's life insurance policy, what is known as the Baxter mortgage, from which she received, from 1933 to 1935, five interest checks of $105.00 and in November 1935 the principal sum of $3,505.-40. This check was deposited in the joint checking account, the deposit slip being made out by an officer of the bank. Subsequently $1,500.00 of the joint checking account was used by Mr. Forster in purchasing the $5,000.00 building and loan certificate. But it should be noted that this proceeding does not involve an instance of a husband's appropriating his wife's separate property and, without her consent, investing ▮ it in property in his own name as in Joerden v. Stumpe, 232 Mo. App. 959, 106 S. W. (2d) 543. Neither is it an instance of a husband claiming his wife's separate estate as a gift as he did in Roethemeier v. Veith, 334 Mo. 1030, 69 S. W. (2d) 930. By his answer to the interrogatories in this proceeding, which defines the issues (Mo. R. S. A., Sec. 66), Mr. Forster's executor claimed that the bank accounts and other property were owned by himself and his wife as joint tenants with right of survivorship and that thereby they became his property upon her death.

As we have said, the checking account was opened by Mr. Forster in 1934 with a deposit of $120.00. Until the account was reduced to $505.59, at the time of Mrs. Forster's death in 1938, it was quite active. In 1934 there were eight fifty dollar deposits and one $100.00 deposit, all made by Mr. Forster. In 1935 he made nine deposits of $100.00 or more, twelve deposits of fifty dollars and five deposits of seventy-five dollars. It was during that year that the $3,505.00 deposit was made. In 1936 he made ten deposits of $100.00 or more, in 1937 he made ten deposits of $100.00 or more and in 1938 six deposits of $100.00 or more. The origin of all these sums is not accounted for but it is certain that the $3,505.00 deposit was the only one made by Mrs. Forster. The account was also quite active as to withdrawals. There were small checks on the account almost daily. In December 1935 and Janary 1936 there were two withdrawals of $1,000.00 and these were deposited in the larger savings account by Mr. Forster in their joint names. The other large withdrawal was in March 1936

when there was a $1,500.00 check, probably used as part of the purchase price of the building and loan certificate. The only large deposit in this account, other than the one of $3,505.00, was a $1,205.79 deposit after Mrs. Forster's death and that sum represented the balance in the smaller savings account.

The smaller savings account, as indicated, was opened by Mrs. Forster and consisted of eight deposits by her in their joint names. The larger savings deposit consisted of the two $1,000.00 deposits from the checking account and $2,199.48 transferred from the two savings accounts previously mentioned. There were about twenty other deposits in this account ranging from seventeen dollars to $250.00. There was a withdrawal of $730.00 from this account in June 1936, also presumably used in purchasing the building and loan certificate. There was also a $500.00 withdrawal in 1937 and a $1,600.00 withdrawal in 1938 prior to Mrs. Forster's death. After her death Mr. Forster withdrew $3,000.00 from this account.

Obviously, these deposits were not made and these bank accounts were not created in the name of the depositor and another to be used by the other person only upon the happening of some contingency or by the survivor upon the death of the depositor. Schnur v. Dunker, supra; Mercantile Bank v. Haley, supra. Nor, in this case, did the depositor retain complete control of the bank accounts thereby indicating that there was not a transfer or creation of a present joint interest. Napier v. Eigel, supra. The form of the deposits or of the accounts was not so limited upon their faces as to destroy the statutory presumption. Murphy v. Wolfe, 329 Mo. l. c. 552-553; 45 S. W. (2d) l. c. 1081; Mercantile Bank v. Haley, 179 S. W. (2d) l. c. 920. Even though most of the funds had their origin in Mrs. Forster's separate estate, the married woman's act (Mo. R. S. A., Sec. 3390) does not prevent her creating a joint deposit and joint ownership of the same funds. Melinik v. Meier (Mo. App.), 124 S. W. (2d) 594, 597. There is no evidence that the joint character of the deposits was induced by fraud or artifice on the part of Mr. Forster or that he acted in violation of any fiduciary relationship. Mississippi Valley Trust Co. v. Smith, 320 Mo. 989, 1004, 9 S. W. (2d) 58, 63-64. In this case, in addition to the presumption of the statute, we have the fact of the codepositors being husband and wife (Annotation 135 A. L. R., l. c. 1011), both freely using the accounts apparently without restriction from 1934 until August 1938. It is not necessary to say whether the joint ownership in this case is based upon a gift, a trust or a tenancy by the entirety. Compare the annotations in 48 A. L. R. 189 ▇ and 66 A. L. R. 881 with the annotations in 103 A. L. R. 1123, 135 A. L. R 993 and 149 A. L. R. 879 and see 14 Am. Jur., Secs. 6-7, 26 Am. Jur., Secs. 66-68 and the annotations in 8 A. L. R. 1017 and 117 A. L. R. 915. It is sufficient here to say, in view of the presumption, the conduct of the codepositors and all the circumstances

914

that Mr. and Mrs. Forster in making the deposits and in establishing the accounts thereby intended to and did create a present joint ownership or joint tenancy, with the attendant right of survivorship, (14 Am. Jur., Secs. 6-11) in the bank accounts and that thereby their absolute ownership passed to Mr. Forster upon his wife's death. Bunker v. Fidelity National Bank & Trust Co., 335 Mo. 305, 315-316, 73 S. W. (2d) 242, 246; Napier v. Eigel, 350 Mo. 1. c. 116, 164 S. W. (2d) 1. c. 911; Murphy v. Wolfe, supra; In re Geel's Estate (Mo. App.), 143 S. W. (2d) 327; Ball v. Mercantile Trust Co., 220 Mo. App. 1165, 297 S. W. 415; Commonwealth Trust Co. v. DuMontimer (Mo. App.), 183 S. W. 1137.

As to the $5,000.00 building and loan certificate, the appellant points to the fact that it was paid for by two checks, one for $1,500.00 drawn on the checking account by Mr. Forster and one for $730.00 drawn on the savings account by him, and $2,770.00 in cash and urges that all these sums had their source in and belonged to Mrs. Forster's separate estate. It is urged that the $2,770.00 cash was part of a sum ($2,060.00) Mrs. Forster had received from the payment of the Golder mortgage in June 1935 and which had been purchased by her when she was Mrs. Laybourne. On the day the mortgage was paid she is supposed to have placed the money in her safety deposit box in the Pioneer Safety Deposit Company. She and her son, Donald O. Woodward, had been joint renters of that box from 1930 until Mrs. Forster removed her property from it on November 5, 1935 and transferred it, including the cash, to the safety deposit box in the Mercantile Home Safe Deposit Company. The appellant points to certain of Mrs. Forster's memorandums, found after her death, particularly one dated January 4th, 1938 and says that they overcome any theory of joint tenancy and, on the contrary, show that she considered this certificate as well as the other property involved as her own separate property. The memorandum dated January 4th, 1938 seems to have been sort of an inventory or resume of her property together with an indication of the origin of some of it. She lists her home with a value of $9,600.00, a $1,000.00 gas bond, farm loan $845.00, furnishings $2,000.00 and certain lots, all totalling $15,228.00. She lists in another column $5,000.00 from Mr. Laybourne's insurance and $2,500.00 in savings, totalling $7,500.00. At the bottom of the page is this notation: "My cash Feb 4th 38 $2500 in R Hill bank Rest in Bank and in my savings bank." He points to Mrs. Forster's will which she executed on the 25th day of January 1938 without Mr. Forster's knowledge and in fear of his discovery of it. The appellant executor urges that all these circumstances conclusively destroy the respondent's theory of a joint ownership of this certificate. Ambruster v. Ambruster, 326 Mo. 51, 73, 31 S. W. (2d) 28, 37, 77 A. L. R. 782; Napier v. Eigel, supra,

In this case, however, with respect to the building and loan certificate, the appellant's explanations are not comparable to the facts and circumstances in the Ambruster and Napier cases. Here the president of the building and loan association testified that both Mr. and Mrs. Forster came to his office for the purpose of investing $5,000.00 in fully paid shares of the association. He testified that both Mr. and Mrs. Forster stated that they wanted the stock issued in their joint names with the right of survivorship so that either could certainly get the money upon the death of one of them. The president, to be certain, went over this phase of the matter with them a second time and it was his recollection that Mrs. Forster requested joint ownership and it was accordingly issued to "P. T. Forster and/or Gurrettie V. Forster or the survivor of either" and was found in their joint safety box upon her death. There isn't anything in Mrs. Forster's will inconsistent with joint ownership of this certificate. Bunker v. Fidelity Nat. Bank & Trust Co., 335 Mo. l. c. 318, 73 S. W. (2d) l. c. 248. On the contrary, ▉ she made several specific bequests and devices and does not mention this certificate or any other property involved in this proceeding. In addition she devises her home to her husband, Forster, and her two sons "as joint tenants and not as tenants in common." So it is with the memorandum, assuming it to be admissible in evidence, there isn't anything in it inconsistent with joint ownership of the property involved in this proceeding. Here again, as with the bank accounts, in view of all the circumstances, Mr. and Mrs. Forster in purchasing the certificate, having it issued in their joint names and depositing it in their joint safety box intended to and did establish a present joint ownership or joint tenancy with the attendant right of survivorship (14 Am. Jur., Secs. 6-11) and the certificate became the absolute property of Mr. Forster upon his wife's death. Bunker v. Fidelity Nat. Bank & Trust Co., supra; Benton v. Smith (Mo. App.), 171 S. W. (2d) 767; Yates v. Richmond Trust Co. (Mo. App.), 220 S. W. 692.

▉ The situation is not the same with respect to the $875.00 worth of Home Owner's Loan Corporation bonds, however. As to these the trial court found, and we accept that finding, that they "were originally purchased with funds belonging to Mrs. Forster" and were subsequently placed in the joint safety box. The trial court finds Mr. Forster's joint ownership of them solely from the fact that they were placed in the joint box under the joint deposit agreement which recites that the contents of the box belongs "to said lessees jointly, as joint tenants with the right of survivorship." Whether a presumption of joint ownership arose from the mere fact of the joint lease and joint deposit agreement (Annotations 101 A. L. R. 832; 113 A. L. R. 573) we need not say because the court found that they were purchased with Mrs. Forster's separate money. They were not in their joint names as the certificate was. So far as appears from this

record they were merely in the joint box. When the contents of the box were inventoried there were other items, particularly the $1,600.00 Gordon real estate mortgage, in the box which Mr. Forster's executor does not claim, illustrating as a fact that all the contents of the box were not jointly owned with right of survivorship. They were not claimed in the interrogatories as a gift. 41 C. J. S., Sec. 150; 24 Am. Jur., Sec. 83. They were not in form jointly owned and, in all the circumstances, there is no evidence indicating that Mrs. Forster intended to or did create a present joint ownership of these bonds merely by depositing them in the joint box. Napier v. Eigel, supra; Ambruster v. Ambruster, supra.

The $400.00 note and mortgage were payable to "Gretta Forster and Peter Forster." The loan was to Mrs. Forster's sister but the record is silent as to where the $400.00 came from. Under all the circumstances there is no indication that they were in fact Mrs. Forster's sole separate property. Mr. Forster's executor did not appeal and consequently it becomes unnecessary for us to say whether the note and mortgage were owned by them as tenants in common or as joint tenants, or, to pass upon the trial court's ruling on this point further than to say that the note and mortgage were not Mrs. Forster's separate property. See 14 Am. Jur., Secs. 15-19; Mo. R. S. A., Sec. 3024; Zahner v. Voelker (Mo. App.), 11 S. W. (2d) 63; Craig v. Bradley, 153 Mo. App. 586, 134 S. W. 1081.

The trial court's judgment as to the three bank accounts, the building and loan certificate and the $400.00 note and mortgage is affirmed. The judgment as to the $875.00 worth of Home Owner's Loan Corporation bonds is reversed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.