**Ruth Richmond NEWCOMBE, Plaintiff-Respondent,**

v.

**Judson FARMER, Grace McNabb, Administratrix of the Estate of Effie Richmond Farmer, Deceased, and Bank of Belgrade, a corporation, Defendants,**

**Grace McNabb, Administratrix of the Estate of Effie Richmond Farmer, Deceased, Defendant-Appellant.**

No. 30811.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

**273**

Samuel Richeson, Dearing, Richeson & Weier, Hillsboro, for appellant.

Frank May, Robert A. McIlrath, Flat River, for respondent.

BRADY, Commissioner.

The issues involved in this appeal arise out of a dispute as to the ownership of a bank account in the sum of $3,385.37, claimed by the administratrix to belong to the estate of Effie Richmond Farmer, and by her daughter, the plaintiff in the trial court, to belong to her. The jury found the issue in favor of the daughter, respondent here, and awarded her the full fund. Upon her timely after trial motions being overruled, the administratrix has perfected this appeal and will hereinafter be referred to as the appellant.

The respondent's amended petition alleged that on the 4th of February, 1953, the respondent and her husband purchased from her mother a tract of land in Washington County, Missouri, in which the mother reserved a life estate; that the respondent and her husband assumed a deed of trust on that property in the amount of $2,500.00; that on December 4, 1958 " * * * the plaintiff and her husband sold said property * * *" for $3,500.00 and directed the mother to receive this amount and to " * * * place the same in a joint account with right of survivorship in the Bank of Belgrade to be in the name of Effie Richmond and Ruth L. Newcombe * * *"; that the mother did receive the money but, contrary to the directions given her by the Newcombes, placed the money in the bank in her own name; that the respondent's mother married Judson Farmer in 1955; that the mother died on April 23, 1959, then having $3,385.37 " * * * of the money belonging to your petitioner * * *" in the Bank of Belgrade in her own name; that this money is claimed by the administratrix as part of the estate and the bank therefore refuses to pay it to the respondent; that this money does not belong to the estate but does belong to the

respondent. The petition prayed a judgment " * * * declaring that said money above mentioned that is now in the Bank of Belgrade is the sole property of the Plaintiff herein and that Judson Farmer and Grace McNabb, as Administratrix, of the Estate of Effie Richmond Farmer, has no title or interest in and to the same and that the Bank of Belgrade be directed to pay all of said money to the Plaintiff herein."

Appellant's answer, insofar as the matters essential to this appeal are concerned, admitted that the money remained on deposit in the Bank of Belgrade in the name of Effie Richmond Farmer, denied that it belonged to plaintiff, denied that plaintiff and her husband directed Effie Richmond Farmer to receive the money and place the same in a joint account, admitted the death of Effie Richmond Farmer, and the amount remaining on deposit at that time, and admitted that defendant Grace McNabb as administratrix claimed to be entitled to said funds.

The appellant contends that the respondent failed to make a submissible case because there was no evidence of any agreement to deposit this money in a joint account with the right of survivorship and therefore the trial court reversibly erred in overruling appellant's motions for a directed verdict. Secondly, appellant contends that the trial court reversibly erred in permitting the respondent to testify at all. In this regard it is the appellant's position that respondent was barred from testifying because of the Dead Man's Statute. The third allegation of error deals with the trial court's action in permitting respondent to testify that Judson Farmer had filed a claim for allowances, that respondent had paid her mother's funeral and medical expenses, and that respondent and her mother had previously maintained a joint account in another bank. The appellant also assigns as reversible error the trial court's action in giving and reading to the jury Instruction No. 1, contending that there was no evidence to support the submission of such an instruction. The last allegation of reversible error deals with the trial court's action in refusing to permit appellant's counsel to argue to the jury that an inference unfavorable to respondent should be drawn from the failure of respondent's husband to testify since he was also a party to the transaction out of which this fund arose. Under our disposition of this appeal, we will rule only upon the contentions of appellant with regard to the lack of a submissible case and, because the matter is closely connected thereto, the giving of respondent's verdict—directing Instruction No. 1. For that reason, the evidence has been summarized without noting the repeated and energetic objections by appellant's counsel.

Instruction No. 1 reads:

"The Court instructs the jury that if you find and believe from the evidence that Ruth Richmond Newcombe and her husband, Paul Newcombe, signed and delivered a Deed to Effie Richmond Farmer, deceased, selling real estate mentioned in the evidence and if you further find that Effie Richmond Farmer received $3,500.00 for said property that was sold and if you further find and believe from the evidence that at the time Ruth Richmond Newcombe and Paul Newcombe delivered the Deed to Effie Richmond Farmer, it was agreed by all parties thereto that the money for said property was to be placed in the Bank of Belgrade, a Corporation, with Effie Richmond Farmer and Ruth Richmond Newcombe as joint tenants with right of survivorship, then, so finding your verdict will be for the Plaintiff."

It should be pointed out that Instruction No. 2 hypothesized that if no agreement to deposit the money in the joint names with right of survivorship was found, then the verdict should be for the appellant. It is obvious that the jury found an agreement. The only other instruction given was a burden of proof instruction.

The evidence was that Effie Richmond, the respondent's mother, was, after her husband's death, the sole owner of some real estate in Washington County, Missouri. On February 4, 1953, while a feme sole, by "general warranty deed", admitted into evidence, Mrs. Richmond conveyed one-half interest in this property to "Ruth L. Newcombe or Paul E. Newcombe" but reserved a life estate to herself. The Newcombes assumed a deed of trust in the amount of $2,500.00 on the farm. Mrs. Richmond married Judson Farmer in 1955. On December 4, 1958, by warranty deed admitted into evidence, Judson Farmer, Effie Richmond Farmer, Paul E. Newcombe and Ruth L. Newcombe conveyed this same property, a farm, to one Cruse Shelton and Oda Mae Shelton, his wife, in consideration of $3,500.00. The respondent testified that this deed was sent to her by her mother for her and Paul Newcombe to sign; that her mother secured the buyers, the Sheltons; that her mother received the payment for the property; that her mother died in April of 1959; and that her mother had a bank account at the Bank of Belgrade, and at the time of her death there was approximately $3,-400.00 or $3,300.00 in it. The respondent further testified that she, her husband and her mother also owned two lots in Belgrade which were conveyed to them on April 3, 1959, by the deceased's sister, Mattie Turner; that her mother had a well drilled on these lots before her death; that her mother paid for the lots and the well by check; that on July 10, 1957, after her mother's marriage to Mr. Farmer, she and her mother opened an account in the amount of $500.00 with the Ozarks Federal Savings and Loan Association of Farmington, Missouri; that said account read "Effie Farmer and Ruth L. Newcombe as Joint Tenants with right of survivorship and not as Tenants in Common;" and that she paid her mother's funeral expenses from this account; that she paid her mother's "doctor bills"; and that she and her mother once had a joint account payable to either

or the survivor at the Washington County Commercial Bank.

Mattie Turner testified that the deceased was her sister and the respondent her niece; that "Effie" had discussed the sale of the property to the Sheltons with her and had told the witness " * * * she wanted the money to go into the property on the lots for Ruth and Paul"; " * * * the proceeds from the sale of the property was to be put into a home in Belgrade deeded to Paul and Ruth and Paul Newcombe"; that Effie told her " * * * the $3500.00 on deposit in the Belgrade Bank, to be used for Ruth and Paul * * * " and that the lots the witness sold to Effie and the Newcombes were paid for by Effie.

Mr. Shelton testified that his negotiations were conducted with Mr. and Mrs. Farmer; that he never saw the respondent until the trial; that Effie had told him Mr. Farmer had put his money into his son's name and she would need a home after he died and she would have to buy one or build one; that Effie wrote to her daughter about selling and sent the deed to the Newcombes to sign after discussing his offered price with them.

The defendant, after the trial court overruled her motion to dismiss, offered Harold Turner as a witness. Mr. Turner was then cashier at the Belgrade State Bank and previous to that had been assistant cashier at the bank. His testimony was that the deceased and her first husband maintained an account at the bank which at Mr. Richmond's death was changed to the name of Mrs. Effie Richmond; that as early as October, 1955, the account was carried as "Mrs. Effie Richmond"; that there never was a signature card for the account; that after her marriage to Judson Farmer the account was carried as "Mrs. Effie Richmond Farmer" and so remained at her death; that the deceased was a news reporter for the Independent Journal for the Belgrade area and came to the bank every Monday to get news items and probably was there two or three times every week;

that she never gave any instructions about changing the account to include Mr. Farmer, or the respondent; that the proceeds from the sale to the Sheltons went into this account; and that he did not recall the $500.00 withdrawal to open the Ozarks Federal Savings and Loan account. The witness identified the ledger sheets on the account beginning in October, 1955, and extending through April 16, 1958, and stated that he had the later ledger sheets at the bank and could also get the earlier ones if respondent's counsel wanted them. Counsel declined the appellant's counsel's offer to produce them.

The appellant rested and presented her motion for a directed verdict at the close of all the evidence. This, the trial court overruled and submitted the cause to the jury with the resultant verdict for the respondent.

Insofar as the trial court's ruling upon the appellant's motion to dismiss offered at the close of respondent's evidence is concerned, appellant's contention has no merit. The transcript discloses that appellant offered evidence after the trial court overruled its motion, and by so doing confined our review of any alleged error with respect to such motions to the motion for a directed verdict offered at the close of all the evidence. See Missouri Digest, Trial, ☞420. In determining the correctness of the trial court's denial of that motion, we are confined to the issues submitted and with respect to that submission we are to take the evidence in the light most favorable to respondent, giving her the benefit of all reasonable inferences to be drawn therefrom, Missouri Digest, Appeal and Error, ☞927(7), 866(3).

This record is devoid of any evidence that " * * * it was agreed by all the parties * * *" at the time of deed to the Sheltons that " * * * the money for said property was to be placed in the bank of Belgrade, a Corporation, with Effie Richmond Farmer and Ruth Richmond Newcombe as joint tenants with right

of survivorship * * *" as submitted by respondent's verdict directing Instruction No. 1. No one gave any evidence of any such agreement between any of the parties, and certainly there was no evidence of any such agreement by the respondent's mother. Section 362.470 RSMo 1959, V.A.M.S. prescribes the form for creating a joint tenancy with right of survivorship and it is obvious that this account was not set up in that form. Absent obedience to the requirements of this section of our statutes, there is no presumption of joint tenancy with the attendant right of survivorship, and the survivor has the burden of proving the joint tenancy, Cranford v. Langston, Mo.App., 356 S.W.2d 581[3]; Princeton State Bank v. Wayman, Mo.App., 271 S.W.2d 600. The evidence given by the witness Turner was uncontested and uncontradicted and shows that at all times during which the respondent's mother had maintained an account in the Belgrade State Bank since the death of her husband, Mr. Richmond, that account had been maintained in her name alone without any joint tenancies whatever. Moreover, the respondent's own evidence with respect to the establishment of the joint account in the Ozarks Federal Savings and Loan shows that the respondent's mother knew how to establish a joint account with right of survivorship if she wanted to do so. The uncontradicted evidence also is that she was at the bank two or three times every week and had ample opportunity to do so if she wished.

Neither do we find any evidentiary circumstances present in this case from which the jury might reasonably have inferred that such an agreement to deposit this money as joint tenancy with the right of survivorship was in fact made. The respondent could not contend she was in fact the owner of the property before it was sold to the Sheltons and argue from that an inference that the proceeds from the sale were at least jointly hers. This is for the reason that at the time of conveyance to the Sheltons, all that the respondent and her

husband owned was an undivided one-half of the property, and even that undivided one-half was subject to the life estate of the respondent's mother. Moreover, the evidence is undisputed that at one time the respondent's mother owned this property by herself. It is true that Mattie Turner and Mr. Shelton testified that the deceased during her lifetime had stated that she wanted her daughter to have what she had left, and that there is evidence from which it might be found that what the deceased intended to do was to use the money from the sale of the property to build a residence on the lots which she purchased from Mattie Turner, which residence was to pass to respondent after her death. However, that was not respondent's theory of recovery, and neither was it the submission found in Instruction No. 1. The fact of the deceased's intention to build a house which would ultimately pass to the respondent is not proof of an agreement to create a joint tenancy with the right of survivorship. The declarations or inferred intentions of the deceased can not serve, absent other proof, to establish a joint tenancy. In Napier v. Eigel, 350 Mo. 111, 164 S.W.2d 908, the Supreme Court held, at page 911,

" * * * A mere uncompleted intention to grant an interest at death, or some time in the future, or upon the happening of some contingency is not enough. Nor do we think that proof of intention alone, even to grant a present interest, would suffice without proof of conduct showing the carrying out or fulfillment of that intention."

It follows that there was no evidence to sustain the giving of Instruction No. 1, and it is apparent that the respondent failed to make a submissible case upon her theory that there was an agreement between her mother and the other parties to the deed to the Sheltons to deposit the money realized from the sale of the property in the bank with the respondent and her mother being joint tenants with the right of survivorship to that account. The transcript discloses that the first trial between these parties resulted in the jury being unable to agree, and a resulting mistrial. This being the second trial of the same issues between the same parties, there is no reason to suppose that the respondent could now produce any other evidence bearing upon the issue. Accordingly, the judgment should be reversed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is reversed.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.